Filed 10/21/13 (unmodified opn. attached)
***CERTIFIED FOR PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MT. HOLYOKE HOMES, L.P., et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>　　　v.<br><br>JEFFER MANGELS BUTLER &<br>MITCHELL, LLP et al.,<br><br>　　　Defendants and Respondents. | B243912<br><br>(Los Angeles County<br>Super. Ct. No. BC430142)<br><br><br>　ORDER<br><br>(1) MODIFYING OPINION<br>(2) DENYING PETITION<br>　　FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

　　　It is ordered that the opinion filed herein on September 24, 2013, be modified as follows:

　　　(1)　　On page 18, line 8, at the end of sentence ending with the words "… in a legal malpractice action.", insert the following sentence:　Our conclusion is the same even if we assume the truth of the facts stated in the Chernow declaration.

(2)      Page 18, line 13, delete the entire paragraph beginning on line 13 with the words "We reject Defendants argument …" and ending on line 20 with the words "… make the required disclosure."

(3)      Page 18, line 13, insert new paragraph which reads as follows:

Defendants argue that Jones had constructive knowledge that Judge Chernow had listed Mangels as a reference on his resume because his resume was readily discoverable on the Internet.  They argue that her constructive knowledge precludes vacating the award based on the nondisclosure of that information.  We disagree.  A party to an arbitration is not required to investigate a proposed neutral arbitrator in order to discover information, even public information, that the arbitrator is obligated to disclose.  (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 937; cf. *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 425 [discussing judicial disqualification].)  Instead, the obligation rests on the arbitrator to timely make the required disclosure.  The fact that the information is readily discoverable neither relieves an arbitrator of the duty to disclose nor precludes vacating the award based on the nondisclosure.

(4)      Page 21, line 5, at the end of the sentence ending with the words "… the Chernow declaration was admissible.", please add the following footnote which reads as follows:

Absent a statement of decision, we must infer all factual findings necessary to support the judgment.  (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)  But if the record clearly discloses the reasons for the trial court's ruling, we will not presume that the court relied on a different reason.  (*Border Business Park, Inc. v. City of San Diego* (2007) 142 Cal.App.4th

1538, 1550; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384.)  The order here makes it clear that the reason for the ruling was the court's conclusion that the limited relationship between Judge Chernow and Mangels and the fact of the listing on the resume created no appearance of impropriety, and not that Judge Chernow was unaware of the listing on his resume at the time of the required disclosures.  We therefore will not infer such a finding.

The petition for rehearing is denied.

[There is no change in the judgment.]

3

Filed 9/24/13 (unmodified version)

***CERTIFIED FOR PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MT. HOLYOKE HOMES, L.P., et al., | B243912 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC430142) |
| v. | |
| JEFFER MANGELS BUTLER & MITCHELL, LLP et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County,

Zaven V. Sinanian and Michael P. Linfield, Judges. Reversed with directions.

Timothy D. McGonigle for Plaintiffs and Appellants.

Reuben Raucher & Blum, Timothy D. Reuben, Stephen L. Raucher and

K. Cannon Brooks for Defendants and Respondents.

1

Mt. Holyoke Homes, L.P. (MHH), and Darla Jones (collectively Plaintiffs) challenge the granting of a motion to compel arbitration and the denial of their motion to vacate the arbitration award in a legal malpractice action against Jeffer Mangels Butler & Mitchell, LLP (JMBM) and John Bowman (Defendants). They contend (1) an arbitration provision in the parties' legal services agreement is unenforceable because it was not adequately disclosed or explained to them; (2) the arbitrator failed to timely disclose his prior relationship with a partner in JMBM, so the award must be vacated; and (3) the trial court erred by overruling their objections to the arbitrator's declaration filed in opposition to their petition to vacate the award.

We conclude that the arbitration agreement is enforceable and the trial court properly compelled arbitration. We also conclude that the fact that the arbitrator had listed a partner in JMBM as a reference on his resume reasonably could cause an objective observer to doubt his impartiality as an arbitrator, and his failure to timely disclose that fact compels the conclusion that the arbitration award must be vacated. We therefore will reverse the judgment with directions to vacate the arbitration award.

### FACTUAL AND PROCEDURAL BACKGROUND

1.  *Factual Background*

Jones and her late husband formed MHH for the purpose of developing real property in Pacific Palisades. They retained Reznik and Reznik in 1992 to represent them in connection with an application for subdivision of the property. Their legal services agreement contained no provision requiring the arbitration of disputes.

2

John Bowman was the attorney primarily responsible for handling the matter. Benjamin Reznik was another attorney with the same firm.

Benjamin Reznik and Bowman joined JMBM in 1997. Jones signed a legal services agreement with JMBM in October 1997. Paragraph 11 of the agreement stated in bold capital letters:

"**ARBITRATION AND WAIVER OF JURY TRIAL. ANY DISPUTE BASED UPON OR ARISING OUT OF OUR ENGAGEMENT, THIS LETTER AGREEMENT AND/OR THE PERFORMANCE OR FAILURE TO PERFORM SERVICES (INCLUDING, WITHOUT LIMIT, CLAIMS OF BREACH OF DUTY OR PROFESSIONAL NEGLIGENCE) SHALL BE SUBJECT TO BINDING ARBITRATION TO BE HELD IN LOS ANGELES OR SAN FRANCISCO COUNTY, CALIFORNIA (WHICHEVER COUNTY IS THE ONE IN WHICH THE FIRM'S OFFICE IS LOCATED WHICH PERFORMED MORE OF THE SERVICES IN QUESTION) BEFORE A RETIRED CALIFORNIA SUPERIOR COURT JUDGE. JUDGMENT ON THE ARBITRATOR'S AWARD SHALL BE FINAL AND BINDING, AND MAY BE ENTERED IN ANY COMPETENT COURT. AS A PRACTICAL MATTER, BY AGREEING TO ARBITRATE ALL PARTIES ARE WAIVING JURY TRIAL.**"

Paragraph 13 of the legal services agreement with JMBM stated, in part, "We are not advising you with respect to this letter because we would have a conflict of interest in doing so. If you wish advice, you should consult independent counsel of your choice." The agreement also provided that the prevailing party in any arbitration or

3

litigation was entitled to recover its attorney fees, expert fees and costs. The agreement stated above the signature line for Jones:

"The undersigned has read and understood this agreement. The undersigned acknowledges that this letter agreement is subject to binding arbitration as provided in Paragraph 11 above. The foregoing accurately sets forth all the terms of your engagement, and is approved and accepted on OCT 20, 1997."

The City of Los Angeles denied an application for a preliminary parcel map and a coastal development permit in April 1992. MHH and the Joneses filed a petition for writ of mandate in the trial court challenging the denial. The court granted the petition and issued a peremptory writ of mandate in December 1993 directing the city to vacate its decision and reconsider the application. After extensive negotiations, MHH agreed to reduce the scope of development and accept conditions of approval, and the city approved the revised proposal in April 1999.

A neighbor appealed the city's approval to the California Coastal Commission (Commission). The Commission scheduled a public hearing for July 13, 1999, to determine whether the appeal presented a substantial issue. The city failed to provide the administrative record of its proceedings to the Commission by that date. On the date of the hearing, the Commission opened and continued the hearing without determining whether the appeal presented a substantial issue. JMBM obtained the record and provided it to the Commission by March 29, 2000. The Commission held a hearing on May 9, 2000, in which it determined that the appeal presented a substantial issue and

4

therefore should proceed. The Commission reviewed the subdivision application de novo and denied the application on June 11, 2003.

MHH and the Joneses filed a petition for writ of mandate in the trial court in July 2003 challenging the Commission's decision. They argued for the first time that the Commission lost jurisdiction to decide the matter when it failed to find that the appeal presented a substantial issue within 49 days after the appeal was filed with the Commission. The court granted the petition on that ground and issued a peremptory writ of mandate in November 2006 ordering the Commission to set aside its disapproval of a parcel map and a coastal development permit and dismiss the appeal.

The Commission appealed the trial court's decision to the Court of Appeal. Division Seven of the Second Appellate District held that after litigating the matter to completion before the Commission without challenging its jurisdiction, MHH and Jones were estopped from challenging the Commission's jurisdiction. The Court of Appeal therefore reversed the judgment by the trial court, leaving the Commission's denial of the application as the final decision. (*Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 842-845.)

2. *Complaint and Arbitration*

MHH, Jones and Scott Adler filed a complaint for legal malpractice against JMBM and Bowman in January 2010.[1] They allege that Defendants' failure to timely

_____

[1]    Adler later dismissed his complaint and is not a party to this appeal.

5

challenge the Commission's jurisdiction was negligent and that a timely challenge would have resulted in an approved final parcel map and a coastal development permit.

Defendants filed a petition to compel arbitration pursuant to the arbitration provision in the legal services agreement. Plaintiffs opposed the petition. The trial court granted the petition in May 2010, issued an order compelling arbitration and stayed the trial court proceedings.

The parties initially selected a retired superior court judge, Patricia L. Collins, as the arbitrator, but Jones later objected to Judge Collins after she disclosed a prior relationship with Defendants' counsel. The parties then selected another retired superior court judge, Eli Chernow, as the arbitrator. Judge Chernow disclosed that Defendants' counsel had represented a party to a mediation before him within the past five years, but stated that he was not aware of any relationship with any party or attorney involved in this matter that would impair his ability to act fairly and impartially. Judge Chernow later disclosed that he had known Benjamin Reznik for many years. He also disclosed that he had conducted an arbitration and a mediation involving Adler more than five years earlier. The parties agreed to his appointment as arbitrator despite these disclosures. JMBM filed a cross-complaint in arbitration against plaintiffs and Adler seeking to recover unpaid legal fees.

Judge Chernow issued an Interlocutory Decision in January 2012 finding that, in light of the state of the law at the time regarding the 49-day rule, Defendants had satisfied their duty of care. He also found that it was likely that the Commission would have established a basis to exercise jurisdiction even if the defense were timely asserted,

6

and therefore concluded that Plaintiffs had failed to establish causation. Judge Chernow concluded that Plaintiffs were entitled to no relief on their claims and that JMBM was entitled to recover its unpaid legal fees for services provided and its reasonable attorney fees incurred in connection with the arbitration. He adopted the Interlocutory Decision as his final award in March 2012, awarding JMBM $18,132.81 in unpaid legal fees, $285,000 in attorney fees incurred in connection with the arbitration, and over $150,000 in costs.

3.      *Petitions to Vacate and to Confirm the Arbitration Award*

The arbitration award prompted Jones to search the Internet for evidence of the arbitrator's bias. She discovered for the first time a previously undisclosed resume in which Judge Chernow had named Robert Mangels, a name partner in JMBM, as a reference. She found a link to the resume on the Internet site of the National Academy of Distinguished Neutrals. Mangels was the first of three "References" listed on the resume. Plaintiffs and Adler filed a petition to vacate the arbitration award in April 2012 arguing that the award must be vacated because of Judge Chernow's failure to disclose his relationship with JMBM through Mangels. Defendants opposed the petition and filed a petition to confirm the award. Defendants filed declarations by Judge Chernow and Mangels in support of their opposition.

The Chernow declaration stated, "I have no relationship with Mr. Mangels other than as a neutral involved in mediation, adjudication, and discovery and other reference proceedings. The cases in which Mr. Mangels appeared before me occurred in the 1990s and early 2000s." He stated that his contacts with Mangels did not prevent him

7

from acting impartially in this matter, "nor was such contact a required disclosure under California law." He also stated that he had listed Mangels as a reference only because Mangels was a well-known and highly-regarded litigator who was familiar with his abilities as a neutral, that he had prepared the resume approximately 10 years earlier and that he had never discussed with Mangels naming his as a reference.

The Mangels declaration stated that he had appeared before Judge Chernow as a judge, mediator and arbitrator, but not within the past five years, and that the two had no professional or personal relationship. He stated that he had never discussed acting as a reference for Judge Chernow.

Plaintiffs objected to the Chernow declaration on the grounds that he had no jurisdiction in this case after issuing a final arbitration award and that the existence or nonexistence of actual bias was irrelevant.

The trial court granted Defendants' petition to confirm the arbitration award and denied Plaintiffs' petition to vacate the award. The order stated: "From the declarations of Judge Chernow and Mangels, it is clear that the parties have virtually no relationship beyond Mangels having appeared before Judge Chernow in the past. Simply listing Mangels, amongst other named partners, on a 10-year old resume is insufficient to trigger [Code of Civil Procedure] section 1281.9(a)(6). Further, the Court finds that a person aware of the facts would not entertain a doubt as to the impartiality of the arbitrator."

8

4.      *Judgment and Appeal*

The trial court entered a judgment in July 2012 awarding Plaintiffs no relief on their complaint and awarding Defendants the amounts awarded in the arbitration award, plus interest.  The judgment also states that Defendants are entitled to recover their attorney fees incurred in this action.  The court later awarded JMBM $43,762.40 in attorney fees on JMBM's motion for attorney fees.  Plaintiffs timely appealed the judgment.

## *CONTENTIONS*

Plaintiffs contend (1) the arbitration provision is unenforceable because it was not adequately disclosed or explained to them; (2) the arbitrator failed to timely disclose his prior relationship with Mangels, so the award must be vacated; and (3) the trial court erred by overruling their objections to the Chernow declaration.

## *DISCUSSION*

1.      *The Trial Court Properly Compelled Arbitration*

The California Arbitration Act (Code Civ. Proc., § 1280 et seq.)[2] compels the enforcement of valid arbitration agreements.  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).)  Section 1281 states: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."  "The statutory scheme reflects a 'strong public

---

[2]      All further statutory references are to the Code of Civil Procedure unless stated otherwise.

9

policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citation.]" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380 (*Haworth*).)

A party petitioning the court to compel arbitration (§ 1281.2) bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement. A party opposing the petition bears the burden of proving by a preponderance of evidence any fact necessary to its defense. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) The trial court sits as the trier of fact for purposes of ruling on the petition. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

The arbitration provision here unambiguously states that any dispute arising out of the firm's engagement as counsel, specifically including claims of professional negligence, is subject to binding arbitration. The last paragraph before the signature line further states that Jones, as the undersigned, has read the agreement and acknowledges that it is subject to binding arbitration. Plaintiffs do not argue that the arbitration provision is inconspicuous or procedurally unconscionable in any way. Nor do they argue that the provision is one-sided or substantively unconscionable. Instead, they argue that Defendants had a duty to disclose and explain the significance of the arbitration provision and the failure to satisfy such duty invalidates the arbitration agreement. This is a claim of fraud in the execution, also known as fraud in the inception.

10

A contract is void for fraud in the execution if the promisor was deceived as to the nature of his or her act and did not know what he or she was signing or never intended to enter into a contract. (*Rosenthal, supra,* 14 Cal.4th at p. 415.) For example, a misrepresentation as to the character or essential terms of a proposed contract can render the promisor's assent ineffective. (*Id.* at p. 420.) If the parties were in a fiduciary relationship in which the defendant owed the plaintiff a duty to explain the terms of a proposed contract between them, a breach of that duty may constitute constructive fraud and establish fraud in the execution. (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 959.) The scope of a fiduciary's duty depends on the particular facts. (*Rosenthal*, *supra*, at p. 425; *Brown*, *supra*, at p. 961.) The existence and scope of a duty is a question of law for the court to decide, so our review is de novo. (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213.)

*Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866 (*Desert Outdoor*) rejected essentially the same argument asserted here in similar circumstances. The plaintiffs in *Desert Outdoor* initially signed an attorney fee agreement with no arbitration provision. When their attorney changed firms, the plaintiffs signed a new fee agreement containing a provision requiring binding arbitration of any dispute between the parties. The plaintiffs later sued the attorney for legal malpractice, and the attorney successfully petitioned to compel arbitration. (*Id.* at pp. 869-870.) The plaintiffs argued that the attorney had a duty to disclose and explain the arbitration provision in the new fee agreement and that the arbitration agreement was invalid because he failed to do so. The Court of Appeal concluded that the attorney

11

had no such duty.  (*Id.* at pp. 873-874.)  *Desert Outdoor* stated that the arbitration provision was clearly set forth in the fee agreement signed by the clients, who were knowledgeable business persons, they were advised to consult separate counsel before signing the agreement, and the agreement was not a contract of adhesion.  (*Id.* at p. 874.)

Similarly here, the arbitration provision was clear and explicit.  Jones had hired Reznik and Reznik in 1992 to obtain development approvals, litigated the matter against the city in the trial court, and then negotiated with the city for several years.  She had substantial experience with litigation and legal representation before signing the legal services agreement with JMBM in 1997.  The agreement expressly advised Jones to consult independent counsel if she wished to be advised on the agreement, and plaintiffs have not shown that the agreement was a contract of adhesion.  We conclude that, in these circumstances, Defendants had no duty to point out the existence of the arbitration provision or to explain its significance, and their failure to do so does not invalidate the arbitration contract.

*Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501 (*Lawrence*) and *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102 (*Powers*), cited by Plaintiffs, are not on point.  *Lawrence* concluded that an arbitration provision in a retainer agreement was limited to fee disputes and other financial matters and did not extend to legal malpractice claims.  (*Lawrence*, *supra*, at pp. 1506-1508.)  The agreement was devoted almost exclusively to financial matters, and the trial court found that the client did not understand that she was agreeing to submit any future malpractice

12

claims to arbitration. (*Id.* at pp. 1506-1507.) *Lawrence* stated that any uncertainty should be resolved against the attorney as the party who caused the uncertainty to exist (Civ. Code, § 1654), and concluded that the phrase " 'any other aspect of our attorney-client relationship' " in the arbitration provision should be interpreted as referring only to financial matters similar to the types of financial matters specifically referenced in the agreement. (*Lawrence*, *supra*, at pp. 1506-1507.) Here, in contrast, the arbitration provision is clear and explicit, expressly encompasses claims of professional negligence and is not limited to financial matters.

*Powers*, *supra*, 54 Cal.App.4th 1102, also involved an arbitration provision in a retainer agreement. The initial retainer agreement included an arbitration provision, as did a subsequent amendment to the agreement signed after the attorney had changed firms. (*Id.* at pp. 1106-1107.) *Powers* stated that both arbitration provisions unambiguously encompassed legal malpractice claims. (*Id.* at p. 1113, distinguishing *Lawrence*, *supra*, 207 Cal.App.3d 1501.) *Powers* noted that a nonbinding, formal advisory opinion of the State Bar's Standing Committee on Professional Responsibility and Conduct stated that an attorney was ethically required to fully disclose to an existing client the terms and consequences of an arbitration provision in a new retainer agreement. (*Id.* at pp. 1113-1114.) *Powers* stated, however, that the arbitration provision in the initial retainer agreement did not attempt to limit the attorney's liability for legal malpractice, was not ethically improper and violated no conflict of interest rules, and that the arbitration provision in the later amendment merely confirmed the existing arbitration agreement. (*Id.* at pp. 1114-1115.) *Powers* therefore concluded that

13

the arbitration provision was enforceable and reversed an order denying a petition to compel arbitration. (*Id.* at p. 1116.) In discussing the nonbinding advisory opinion, *Powers* did not hold or suggest that an attorney has a duty to point out and explain to an existing client an arbitration agreement in a new retainer agreement. In the circumstances of this case, we conclude that Defendants had no such duty.

2. *The Denial of the Petition to Vacate the Arbitration Award Was Error*

a. *Legal Framework*

A proposed neutral arbitrator must timely disclose to the parties "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including, without limitation, specified information.[3] (§ 1281.9, subd. (a); see also Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Standard 7(d) (Ethics Standards).)[4] The disclosures must be made in writing within 10 calendar days after service of notice of the proposed nomination or appointment. (§ 1281.9, subd. (b).) The parties have an opportunity to disqualify the proposed neutral arbitrator based on the disclosures. (§ 1281.91,

---

[3] " 'Neutral arbitrator' means an arbitrator who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them." (§ 1280, subd. (d).)

[4] The Judicial Council adopted the Ethics Standards in 2002 as required by the Legislature (§ 1281.85, subd. (a)). Standard 7(d) states in language essentially identical to the language in section 1281.9, subdivision (a), quoted *ante*, the same disclosure requirement, in addition to other disclosure requirements. A neutral arbitrator must comply with the Ethics Standards, and a proposed neutral arbitrator must disclose any matters required to be disclosed under the Ethics Standards. (§§ 1281.85, subd. (a), 1281.9, subd. (a)(2).)

14

subd. (b).)  If a party petitions the trial court to vacate an arbitrator's award and the court finds that the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware" (§ 1286.2, subd. (a)(6)(A)), the court must vacate the award.  (§§ 1286.2, subd. (a), 1286.4, subd. (a).)  Vacation of the arbitrator's award is required in those circumstances, and no prejudice need be shown.  (*Haworth*, *supra*, 50 Cal.4th at p. 394.)

The general requirement that a proposed neutral arbitrator disclose any matter that reasonably could cause a person aware of the facts to entertain a doubt that the proposed arbitrator would be impartial (§ 1281.9, subd. (a)) involves an objective test that focuses on a reasonable person's perception of bias and does not require actual bias. (*Haworth*, *supra*, 50 Cal.4th at pp. 385-386.)  " 'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' [Citation.]  'Judges, like all human beings, have widely varying experiences and backgrounds.  Except perhaps in extreme circumstances, those not directly related to the case or the parties do not disqualify them.' " (*Id.* at p. 389.)

The California Supreme Court in *Haworth*, *supra*, 50 Cal.4th 372, cautioned against construing the governing standard too broadly.  "[T]he appearance-of-partiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." ' [Citation.]  'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." ' [Citation.]  '[T]he partisan litigant emotionally involved in the controversy

15

underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' [Citations.] [¶] 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.' [Citation.]" (*Haworth*, *supra*, 50 Cal.4th at p. 389.)

" 'If the impression of possible bias rule is not to emasculate the policy of the law in favor of the finality of arbitration, the impression must be a reasonable one.' [Citation.] An arbitrator must be able to determine at the outset, with reasonable certainty, what information must be disclosed. It is reasonable to expect that a neutral arbitrator will be able to identify, without much difficulty, the information that must be disclosed regarding the particular relationships and interests that are clearly defined in section 1281.9 and standard 7 of the Ethics Standards. It may well be more difficult for the arbitrator to determine whether a disclosure must be made under the *general* standard of appearance of partiality, because that standard, although objective, is not clear-cut. . . . The arbitrator cannot reasonably be expected to identify and disclose all events in the arbitrator's past, including those not connected to the parties, the facts, or the issues in controversy, that conceivably might cause a party to prefer another arbitrator. Such a broad interpretation of the appearance-of-partiality rule could subject arbitration awards to after-the-fact attacks by losing parties searching for potential disqualifying information only after an adverse decision has been made. [Citation.] Such a result would undermine the finality of arbitrations without contributing to the fairness of arbitration proceedings." (*Haworth*, *supra*, 50 Cal.4th at pp. 394-395.)

16

b. *Standard of Review*

If the facts are undisputed, the question whether an arbitrator was required to disclose a particular matter involves the application of the rule requiring disclosure to undisputed facts. This is a mixed question of fact and law. Our review is de novo. (*Haworth*, *supra*, 50 Cal.4th at pp. 385-386.)

c. *An Objective Observer Reasonably Could Entertain a Doubt as to Judge Chernow's Ability to Be Impartial in this Case*

Some of the material facts are undisputed. Mangels is a partner in JMBM, the law firm defendant in this action. Judge Chernow listed Mangels as a reference on his resume, which was available on Internet at the time of the award. Plaintiffs discovered this fact for the first time after the arbitration.

The Chernow declaration augmented these undisputed facts with additional facts seemingly favorable to Defendants. Plaintiffs presented no conflicting evidence. We will assume for the purpose of argument that the Chernow declaration is admissible and that the facts stated in the declaration are undisputed. Accordingly, we will assume that it is undisputed that Judge Chernow never discussed with Mangels the fact that he was listed as a reference and listed him only because Mangels was a well-known and highly-regarded litigator who was familiar with Judge Chernow's abilities as a neutral, that the two have no professional relationship, and that Judge Chernow prepared the resume approximately 10 years before issuing the arbitration award.

The question is not whether Judge Chernow actually was biased, but whether a reasonable person aware of the facts reasonably could entertain a doubt that he could

17

be impartial in this case. (*Haworth*, *supra*, 50 Cal.4th at pp. 385-386.) We conclude that the answer is yes. Judge Chernow had listed Mangels as a reference on a resume that was publicly available on the Internet at the time of his selection as an arbitrator in this matter. Judge Chernow presumably believed that Mangels had a favorable opinion of his abilities as a neutral and would speak positively about him if asked. An objective observer reasonably could conclude that an arbitrator listing a prominent litigator as a reference on his resume would be reluctant to rule against the law firm in which that attorney is a partner as a defendant in a legal malpractice action. To entertain a doubt as to whether the arbitrator's interest in maintaining the attorney's high opinion of him could color his judgment in these circumstances is reasonable, is by no means hypersensitive, and requires no reliance on speculation. We believe that an objective observer aware of the facts reasonably could entertain such a doubt.[5]

We reject Defendants' argument that because the resume was readily discoverable on the Internet Judge Chernow had no obligation to disclose the fact that he had listed Mangels as a reference. A party to an arbitration is not required to investigate a proposed neutral arbitrator in order to discover information, even public information, that the arbitrator is obligated to disclose. (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 937; cf. *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 425 [discussing judicial disqualification].) Instead, the obligation rests on the arbitrator to timely make the required disclosure.

---

[5]     We do not suggest in any manner that Judge Chernow actually was biased in favor or against any party to this litigation.

An arbitrator's failure to make a required disclosure presumably would not justify vacating the arbitrator's award if the party challenging the award had actual knowledge of the information yet failed to timely seek disqualification.[6] (See *Kaiser Foundation Hospitals, Inc. v. Superior Court* (1993) 19 Cal.App.4th 513, 517.) Courts have also held that if the arbitrator disclosed information or a party had actual knowledge of information putting the party on notice of a ground for disqualification, yet the party failed to inquire further, the arbitrator's failure to provide additional information regarding the same matter does not justify vacating the award. (*Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 842; *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 190-191; *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1096-1097.) Here, however, it is undisputed that Jones did not discover until after the arbitration that Judge Chernow had listed Mangels as a reference on his resume, and there is no indication that she previously had actual knowledge of information that would have put her on inquiry notice of that undisclosed fact.

The holding in *Haworth*, *supra*, 50 Cal.4th 372, is distinguishable. *Haworth* involved an action by a female patient against a male doctor who had performed cosmetic surgery on her, allegedly without her consent and negligently. The neutral arbitrator, a former judge, failed to disclose that ten years earlier he had received

---

[6]     *Haworth*, *supra*, 50 Cal.4th at page 394, footnote 15, declined to decide the impact on a motion to vacate an arbitration award of a party's actual or constructive knowledge, prior to the arbitration, of a ground for disqualification.

19

a public censure for inappropriate conduct toward court employees involving sexually suggestive comments, comments demeaning to women and an ethnic slur. (*Id.* at pp. 378-379.) *Haworth* concluded, "the circumstances underlying the public censure would not suggest to a reasonable person that Judge Gordon's conduct and attitude toward women would cause him to favor a male physician over a female patient in a case in which the appearance of the patient who underwent cosmetic surgery instead was worsened. . . . Judge Gordon's public censure simply provides no reasonable basis for a belief that he would be inclined to favor one party over the other in the present proceedings. [¶] Unlike cases in which evidence of gender bias has required disqualification of a judge, the subject matter of this arbitration was not such that the circumstance of gender was material, or that gender stereotyping was likely to enter into the decision made by the arbitrators." (*Id.* at p. 391.) It was in this context, after noting the lack of connection between the undisclosed fact and the subject matter of the arbitration, that Haworth cautioned against construing the appearance-of-partiality standard too broadly. (*Id.* at pp. 385-386.)

Here, in contrast, the connection between the undisclosed fact of the arbitrator's naming an attorney as a reference on his resume and the subject matter of the arbitration, a legal malpractice action against the law firm in which the same attorney is a partner, is sufficiently close that a person reasonably could entertain a doubt that the arbitrator could be impartial. We conclude that Judge Chernow was required to disclose the fact that he had listed Mangels as a reference on his resume. Judge Chernow did not state in his declaration that at the time of his required disclosures he was not aware that

20

he had listed Mangels as a reference on his resume, and there appears to be no reasonable dispute that he was aware of that fact at that time. His failure to timely disclose this ground for disqualification of which he was then aware compels the vacation of the arbitrator's award. (§ 1286.2, subd. (a)(6)A).) In light of our conclusion, we need not decide whether the Chernow declaration was admissible.

## *DISPOSITION*

The judgment is reversed with directions to the trial court to vacate the arbitration award and conduct further proceedings consistent with the views expressed in this opinion. Plaintiffs are entitled to recover their costs on appeal.

### *CERTIFIED FOR PUBLICATION*

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.

21