Filed 9/15/21  Shiokari v. Shiokari CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NOBUKO SHIOKARI et al., | |
| Plaintiffs and Respondents, | G059505 |
| v. | (Super. Ct. No. 30-2018-01020192) |
| DAVID SHIOKARI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.  Request for judicial notice.  Granted.

Pacheco & Neach, Rod Pacheco, Brian Neach and Sara Graber for Defendant and Appellant.

Gordinier Kang & Kim, Patricia Cymerman, Edward S. Kim and Nathalie D. Lopez for Plaintiffs and Respondents Nobuko Shiokari and Kenneth Shiokari.

Freeman, Freeman & Smiley and John P. Godsil for Stephen J. Donnell for Plaintiff and Respondent The Tomko Limited Partnership.

\*          \*          \*

Defendant David Shiokari appeals from a judgment on an order confirming an arbitration award in favor of his mother and brother, plaintiffs Nobuko Shiokari and Kenneth Shiokari, individually and as trustees of various family trusts. Defendant contends the trial court should have vacated the award because a neutral arbitrator failed to disclose a prior arbitration matter involving one of plaintiffs' attorneys. We conclude the arbitrator was not required to disclose the prior matter. Defendant also contends the arbitrators acted in excess of their authority and that the arbitration was fundamentally unfair. As discussed below, we conclude the arbitrators did not act in excess of their authority and that defendant failed to show the arbitration was fundamentally unfair. Accordingly, we affirm.[1]

I

FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Tom and Nobuko Shiokari created The Tomko Limited Partnership (Tomko) as part of their estate plan. Tomko invested in three auto centers, which were acquired and held through separate LLCs. David Shiokari was the managing general partner of Tomko and a managing member of the LLCs.

On September 20, 2018, plaintiffs filed a complaint, seeking judicial dissolution of Tomko, accounting and compensatory damages for defendant's alleged breach of fiduciary duty and financial elder abuse. Defendant successfully moved to compel arbitration of the claims pursuant to Section 9.2 of the Tomko Partnership Agreement. As set forth in that agreement, "[a]ny and all disputes or controversies arising out of the Agreement shall be resolved by arbitration in Orange County,

---

[1] At oral argument, plaintiffs' counsel asked us to consider her elderly client's age and fragility in deciding the case. Her point was that if we reversed, the matter would have to be retried and her client might not be able to go through that again. When asked whether she was asking us to decide the case in her favor because her client was elderly, she responded, "No, but it is a 'factor' to be considered." It is not, and we didn't.

2

California pursuant to the Commercial Arbitration Rules of the American Arbitration Association [(AAA)]."[2]

AAA assigned the dispute to a panel of three arbitrators. The parties selected two arbitrators, Rebecca Callahan and retired Judge Nikolas Dibiaso. The parties could not agree on the third arbitrator, so AAA proposed a list of 10 arbitrators, including Thomas Malcolm. After each side ranked the proposed arbitrators, AAA selected Malcolm as the third arbitrator.

After 12 days of evidentiary hearings, a split panel, consisting of Malcolm and Callahan, issued a $5.5 million award, including $1 million in punitive damages, in favor of plaintiffs and against defendant. The panel found that defendant "owed a fiduciary duty to his mother and brothers not just because he was their partner and held the position of general managing partner and managing member [of The Tomko Limited Partnership], but because of the fact that the enterprise he was managing was effectively the estate of his mother and father, which he was charged with the duty to manage for the overall benefit of the family." "The Panel . . . found that the clear and convincing evidence in this case established that David committed fraud upon Tomko, that he misappropriated funds and business opportunities from Tomko while acting in a fiduciary capacity as its managing general partner, and that he acted intentionally to inflict harm and financial loss on Tomko and its partners. The compensatory and punitive damages awarded to Tomko are the direct and proximate result of David's aforementioned and discussed misdeeds."

In a separate statement, Dibiaso expressed disagreement with the calculation of damages. Specifically, Dibiaso opined the arbitration award "apparently holds [defendant] personally liable" on tort theories (e.g., alter ego) never raised or argued. Dibiaso did not provide an alternate damages amount.

---

[2] We grant defendant's request for judicial notice of the AAA Commercial Arbitration Rules and Mediation Procedures.

Plaintiffs then sought to confirm the arbitration award in the trial court. Defendant opposed plaintiffs' petition to confirm the award, and argued that as a matter of law it should be vacated because: (1) Malcolm failed to disclose a previous matter in which he served as an arbitrator and in which one of plaintiffs' counsel, Edward Kim, was an attorney, and (2) the arbitration panel imposed personal liability on defendant based on theories never raised or argued and conducted improper ex parte communications with plaintiffs' counsel.

In reply, plaintiffs argued Malcolm was not required to disclose the previous arbitration matter because the matter was concluded without an arbitration award being rendered after the parties settled. (See Code Civ. Proc. § 1281.9, subd. (d) ["For purposes of this section, 'prior cases' means noncollective bargaining cases in which an arbitration award was rendered within five years prior to the date of the proposed nomination or appointment"].)[3] Plaintiffs further argued defendant forfeited the claim of error because he had actual notice of the prior matter and failed to object or request Malcolm's disqualification. Finally, plaintiffs argued that defendant's claims of unfair treatment are unsubstantiated and insufficient to support vacating the arbitration award.

In a supporting declaration, Kim explained that he and defendant's counsel Damian Moos were former colleagues at Bingham McCutchen. In October 2018, Moos sent an e-mail to Kim inquiring about a list of proposed arbitrators, which included Malcolm's name. At that time, Kim was a partner with Troutman Sanders, and not involved with the instant litigation. Kim responded to the e-mail by informing Moos that "I have an arbitration with Tom Malcolm now, and just had a hearing with him last week." Kim explained that his law firm had an indemnity case before Malcolm, and he had not been involved with the case prior to being asked to supervise a senior associate

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

4

on a single motion regarding a preliminary legal issue. After the October 17, 2018 hearing on that motion, the parties settled.

In April 2019, Kim left Troutman Sanders to form Gordinier, Kang and Kim, with several former colleagues, including John Kang. Kang's firm, Kang P.C., was representing plaintiffs in the instant case. Subsequently, Gordinier, Kang and Kim served notice that Kang P.C. was changing its name to Gordinier, Kang and Kim and that Kim was added as one of the attorneys for plaintiffs in this case. Kim did not participate in any hearings or conferences with the arbitration panel until a January 21, 2020 hearing. Before the January 21, 2020 hearing commenced, Malcolm stated that Kim looked familiar and asked if they had been involved in a prior case. "I responded affirmatively to Mr. Malcolm's question, and I reminded Mr. Malcolm that I appeared once before on a motion in connection with a prior unrelated arbitration (the Indemnity Action). Mr. Malcolm and I then had a brief discussion about the prior case, and I reminded him that I had only appeared on one motion in the prior case, and I told Mr. Malcolm that the case settled after the hearing on the motion and that there were no other hearings or proceedings. Mr. Malcolm said that he was glad to hear the parties settled. This discussion occurred in the presence of the parties and Mr. Moos, as the proceeding was about to begin, and was not a side conversation. [¶] After this discussion about the prior case, Mr. Malcolm asked if anyone had any objections to the hearing commencing. David and his counsel Mr. Moos, who were seated at the table during Mr. Malcolm's discussion with me about the prior case, did not raise any objections or concerns, and they indicated they were prepared to proceed with the evidentiary hearing that morning."

Following arguments, the trial court denied defendant's request to vacate the arbitration award and granted plaintiffs' petition to confirm the award. As to defendant's argument about Malcolm's failure to disclose a prior arbitration, the court concluded the prior matter was not subject to disclosure requirements because the matter "was settled before the arbitration hearing and before any award was rendered."

5

Alternatively, the court determined defendant forfeited his right to demand vacatur because defendant and his "counsel at the time (Moos) was aware of the prior arbitration and did nothing." As to defendant's other grounds for vacating the award, the court concluded those grounds were insufficient to show a fundamental denial of due process or substantial prejudice. It found that the AAA commercial rules provide for emergency hearings by arbitrators and that the parties agreed to arbitrate matters "'arising out'" of the claims in a written postdispute stipulation. "The topics that the Defendant complains of fall squarely within the scope of the Plaintiffs' general allegations of the Defendant having engaged in past breaches of duties, alleged mismanagement of the companies, and creating loss of value and damages when operating and running the companies."

## II

## DISCUSSION

Defendant contends the trial court should have vacated the arbitration award because: (1) Malcolm failed to disclose the prior arbitration matter, (2) arbitrators exceeded their powers when they awarded damages based on claims outside the scope of the arbitration, and (3) the arbitration was fundamentally unfair. We are not persuaded.

*A. Arbitrator's Disclosure of Prior Cases*

Section 1286.2 provides that "the court shall vacate an [arbitration] award if the court determines . . . (6) An arbitrator making the award . . . failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware."

Section 1281.9, subdivision (a), provides in relevant parts: "In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a

6

person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following: . . . [¶] . . . [¶]

"(2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] . . . [¶]

"(4) The names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any."

Section 1281.9, subdivision (d), provides: "For purposes of this section, 'prior cases' means noncollective bargaining cases in which an arbitration award was rendered within five years prior to the date of the proposed nomination or appointment."

Whether the arbitrator was required to make certain disclosures is "a mixed question of fact and law that should be reviewed de novo." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 386 (*Haworth*).) "Courts apply an objective test in determining whether under section 1281.9, subdivision (a), neutral arbitrators must disclose matters that could reasonably cause a person aware of the facts to entertain a doubt that the proposed arbitrator would be impartial. [Citation.] The 'objective test . . . focuses on a reasonable person's perception of bias and does not require actual bias.' [Citation.] Accordingly, we are not concerned with the subjective question of whether the arbitrator was actually biased, but whether an objective, reasonable person aware of the facts reasonably could entertain a doubt that he could be impartial in the case." (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 828, citing *Haworth*, *supra*, 50 Cal.4th at pp. 385-386.) "'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer."' [Citations.] '[T]he partisan litigant emotionally involved in the controversy

7

underlying the lawsuit is not *the disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' [Citations.] [¶] 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*'" (*Haworth*, *supra*, 50 Cal.4th at p. 389.)

Defendant first argues the prior matter involving Kim should have been disclosed pursuant to section 1281.9, subdivision (a)(4). As noted above, the trial court determined Malcolm did not have to disclose the prior arbitration proceeding involving Kim because it was not a "'prior case'" within the meaning of section 1281.9, subdivision (d), since the matter settled before the arbitration hearing or an award was rendered. After independently reviewing the relevant statutory provisions, we agree with the trial court's conclusion. When interpreted together with section 1281.9, subdivision (d), section 1281.9, subdivision (a)(4), required Malcolm to disclose only prior noncollective bargaining cases in which an arbitration award was rendered or a pending noncollective bargaining case. Because no award was rendered in the prior matter involving Kim, Malcolm was not required to disclose that matter.

Defendant argues our interpretation is inconsistent with section 1281.9, subdivision (a)(4)'s, requirement for further disclosure for "each case arbitrated to conclusion." According to defendant, "if 'prior cases' only included cases 'in which an arbitration award was rendered,' there would be no need for the statute to require further details for 'each case arbitrated to conclusion.'" However, defendant ignores the fact the provision applies to disclosure of both prior *and* pending cases. An arbitrator cannot disclose the results of a pending case, "including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any." Thus, the statute limits the additional disclosure requirements to cases arbitrated to conclusion. Our conclusion that Malcolm need not

8

disclose a prior case where no award was rendered does not render the additional disclosure requirements superfluous or redundant.

Finally, defendant argues our interpretation would lead to an absurd result because it would permit a neutral arbitrator to hide the fact that an attorney appeared before him or her 10, or 50, or even 100 times, so long as none of the proceedings resulted in an arbitration award being rendered. Depending on the specific circumstances, numerous appearances before the same arbitrator may cause a reasonable person to entertain a doubt about the impartiality of a neutral arbitrator, and thus could require disclosure. However, those circumstances are not present here. Kim appeared before Malcom once, on a single-issue preliminary motion. A reasonable person knowing this information would not doubt the impartiality of the arbitrator.

Next, defendant argues the prior matter involving Kim should have been disclosed pursuant to section 1281.9, subdivision (a)(2), which requires disclosures consistent with "the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter." Specifically, Standard 7(d) of the Ethics Standards for Neutral Arbitrators (Standard 7(d)) requires an arbitrator to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial," including where the arbitrator is serving or, within the preceding five years, has served "[a]s a neutral arbitrator in another prior or pending noncollective bargaining case involving a party to the current arbitration or a lawyer for a party." (Cal. Rules of Court, Ethic Standards for Neutral Arbitrators, Standard 7(d)(4)(A)(i).)

Defendant argues the standard's disclosure requirement for prior cases is broader than the disclosure requirement of section 1281.9, subdivision (a)(4), and requires Malcolm to disclose the prior arbitration matter involving Kim even if the matter was settled before an arbitration award was rendered. We disagree.

9

Standard 7 of the Ethics Standard does not define "'prior cases'" or otherwise address the definition of "'prior cases'" set forth in section 1281.9, subdivision (d). The Comments to Standard 7 state that the standard's disclosure requirement "mirrors" the disclosure requirement stated in section 1281.9, subdivision (a). Because the Ethics Standard was incorporated into section 1281.9 as subdivision (a)(2), and section 1281.9, subdivision (d), applies to the disclosure requirements of section 1281.9, we interpret Standard 7(d)(4) in light of the definition of "'prior cases'" in section 1281.9, subdivision (d). As stated, Standard 7(d)(4) requires disclosure where the neutral arbitrator served "in another prior or pending noncollective bargaining case involving a party to the current arbitration or a lawyer for a party." Pursuant to section 1281.9, subdivision (d), "[f]or the purposes" of section 1281.9, subdivision (a)'s, disclosure requirements, the prior noncollective bargaining case involving a lawyer for a party need not be disclosed if no award was rendered in the prior matter. Thus, Malcolm need not disclose the prior arbitration matter involving Kim because the matter was settled before an award was rendered. In addition, as stated above, no reasonable person aware of the facts would have entertained a doubt as to the arbitrator's impartiality.

In any event, even had Malcolm been required to disclose the prior matter involving Kim pursuant to Standard 7(d)(4), defendant forfeited his right to seek vacatur of the award based on nondisclosure because as the trial court found, defendant and his counsel Moos had actual knowledge of the prior matter before the arbitration began but failed to timely object or seek disqualification of Malcolm until after the award was issued. Although an arbitrator's failure to make a required disclosure permits an objecting party to seek and obtain vacatur of the arbitration award, "the consequences of such a failure may be overcome if the pertinent facts are actually revealed, or otherwise become known, to the parties in some other fashion." (*Kaiser Foundation Hospitals, Inc. v. Superior Court* (1993) 19 Cal.App.4th 513, 517; accord, *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1313-1314 (*Mt.*

10

*Holyoke Homes*) ["An arbitrator's failure to make a required disclosure presumably would not justify vacating the arbitrator's award if the party challenging the award had actual knowledge of the information yet failed to timely seek disqualification"].) Where an objector's "attorneys had actual knowledge of a ground for disqualification before the arbitration commenced," vacatur is not mandated. (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 85.) As the *Mt. Holyoke Homes* court recognized, an arbitrator's failure to disclose would not justify vacating an award if (1) "the party challenging the award had actual knowledge of the information yet failed to timely seek disqualification," or (2) "the arbitrator disclosed information or a party had actual knowledge of information putting the party on notice of a ground for disqualification, yet the party failed to inquire further." (*Mt. Holyoke Homes*, *supra*, 219 Cal.App.4th at pp. 1313-1314.) Otherwise, "a party could simply hold off on raising the issue of the completeness of the arbitrator's disclosure, wait to see if he or she is pleased with the arbitration award, and, if unhappy with the award, challenge the award on the basis that the arbitrator failed to disclose information that the party could have easily requested prior to the arbitration." (*Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 843.)

Here, defendant's attorney had actual knowledge of the prior arbitration matter because he asked a former colleague (Kim) about Malcolm, and Kim informed him of the matter. Defendant and his attorney also had actual knowledge of the matter because they were present when Kim and Malcolm openly discussed their prior interaction before the arbitration hearing commenced. Despite their knowledge of Malcolm's potential bias, neither defendant nor Moos sought a continuance to investigate the prior arbitration matter or to disqualify Malcolm until raising it in the petition to vacate the award. Thus, defendant has forfeited his right to seek vacatur. (See *Dornbirer v. Kaiser Foundation Health Plan, Inc.*, *supra*, 166 Cal.App.4th at pp. 842, 845 [objector cannot seek to vacate an arbitration award where she was on "notice of any potential bias

11

on the arbitrator's part" before arbitration but "never requested a continuance to further investigate the arbitrator, consented to proceed with the arbitration despite the fact that the arbitrator only 'partially described' the disclosed cases to her, and did not notify the arbitrator or [the other party] that she objected to the arbitrator's participation until after the arbitrator had issued a decision in favor of [the other party]"].)[4]

Defendant challenges the trial court's finding of actual notice of the prior arbitration matter, but substantial evidence in the form of Kim's declaration supports the trial court's factual finding. (See *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189-190 [in reviewing judgment based on affidavits or declarations, "'[w]e must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence'"].) Kim's statements that he personally informed Moos about the prior case and that he discussed the prior case with Malcolm in the presence of defendant and Moos are admissible despite their hearsay nature. (See, e.g., *Caro v. Smith* (1997) 59 Cal.App.4th 725, 733 ["An out-of-court statement is properly admitted for a relevant nonhearsay purpose, such as to show a warning, admonition, or notice"]; *North Beverly Park Homeowners Assn. v. Bisno* (2007) 147 Cal.App.4th 762, 778 ["affidavits and declarations may be used in support of a motion, even though they are hearsay"].)

Defendant argues that section 1281.85, subdivision (c), which provides that the "ethics requirements and standards of this chapter are nonnegotiable and shall not be waived," saves his claim against Malcom for nondisclosure. We disagree. The term "waiver" has multiple meanings. "Generally, 'waiver' denotes the voluntary relinquishment of a known right. But it can also mean the loss of an opportunity or a

---

[4] Our conclusion that defendant waived his right to seek vacatur based on nondisclosure also would apply to any failure to comply with the nondisclosure requirement of section 1281.9, subdivision (a)(4).

right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315.) "[T]he legislative history of section 1281.85 [, subdivision] (c) demonstrate that section 1281.85 [, subdivision] (c) was enacted to address contractual waiver of the disclosure requirements and Ethics Standards, not a party's forfeiture of its statutory right to disqualify an arbitrator . . . . Moreover, to interpret section 1281.85 [, subdivision] (c) as [precluding forfeiture] would render nugatory section 1281.91, subdivision (c), which expressly states that a party's right to disqualify a proposed neutral arbitrator 'shall be waived' if the party fails to serve a notice of disqualification within the period set forth therein." (*United Health Centers of San Joaquin Valley, Inc.*, *supra*, 229 Cal.App.4th at p. 83.) In sum, "section 1281.85, subdivision (c), prohibits contractual waivers, not forfeitures." (*Id.* at p. 85.) Thus, defendant cannot waive his right to receive required disclosures of a neutral arbitrator, but he is not prohibited from forfeiting his right to seek vacatur of an award if he did not receive the required disclosures. That forfeiture occurred here. Accordingly, the trial court properly denied defendant's petition to vacate the award on the ground that Malcolm failed to disclose the prior arbitration matter.

## B. *Excess of Authority*

Section 1286.2, subdivision (a)(4), provides that the court shall vacate the arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Defendant argues the arbitrators exceeded their power because they awarded damages on new claims not asserted in their Amended Statement of Claims (ASC). Specifically, he argues that in the ASC, plaintiffs pleaded claims that defendant engaged in "self-dealing" and "looting," but in their expert report and witness list they submitted claims relating to,

13

among other things, "bad debt write-offs," "the operation of the car washes" and "compensation paid by Tomko over a decade ago."

Defendant raised this same argument below in his Motion in Limine No. 1. The arbitration panel denied the motion, concluding the evidence in the expert report and witness list fell within the purview of what was pleaded in the "original Demand and Amended Claim." The panel also noted the "motion is not directed at anything specific in terms of identifying a claim that was unpled. Rather, the motion focuses on the specifics of the factual allegations and seems to seek to limit [plaintiffs] to the specifics of those factual allegations even though the Amended Statement of Claim alleged that Mr. David Shiokari had engaged in 'continuing' wrongs, including 'by among other things, the acts, omissions, and other conduct explained in detail below.'" After reviewing the ASC, we independently reach the same conclusion. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [appellate court reviews de novo superior court's decision on claim that an arbitrator exceeded his or her powers].) The ASC pleaded general claims that defendant breached his fiduciary and contractual duties by engaging in numerous acts including self-dealing and looting. Although the ASC listed several examples of misconduct, it does not limit itself to those specific acts. Thus, the evidence challenged does not raise new unpleaded claims, but rather substantiates the general claims that defendant breached his fiduciary and contractual duties.

Defendant also relies on the separate statement of Dibiaso to support his argument the arbitration panel acted in excess of its authority. Dibiaso opined that the award gives plaintiffs back rent commencing in 2005, although they sought only back rent based on a 2013 breach of fiduciary duty. The arbitration provision at issue is extremely broad, as it applies to "[a]ny and all disputes or controversies arising out of the Agreement." Thus, to the extent the pre-2013 back rent issues are based on similar

14

breaches of fiduciary and contractual duties by defendant, defendant has not shown how awarding damages for pre-2013 back rent exceeded the arbitrators' powers.

Dibiaso also opined that the award "apparently" imposes personal liability on defendant for acts of his wholly-owned LLCs under an alter ego theory. We note the award never discusses alter ego or vicarious liability. Moreover, Dibiaso's opinion that only an alter ego theory would support personal liability is not necessarily true because "managers of limited liability companies are not immune from personal liability if they have participated in tortious or criminal conduct while performing duties as managers." (*People v. Pacific Landmark, LLC* (2005) 129 Cal.App.4th 1203, 1207.) In sum, defendant has not shown the arbitration panel acted in excess of its authority.

## C. Fundamental Unfairness

Finally, defendant argues the award should be vacated because the arbitration was fundamentally unfair. Defendant identifies three instances purporting to show unfairness: (1) "the Arbitrators conducted an ex parte proceeding outside the presence of Mr. Shiokari's counsel," (2) the arbitrators allowed "uninterested persons to attend the proceedings – whose sole purpose for attending appears to be addition of reputable Orange County businesspeople on Plaintiffs' side of the table," and (3) the arbitrators allowed late-stage claims without defendant having the ability to access documents pertinent to those claims due to time constraints and high costs. The record is sparse on the exact details of the first two instances, including the nature of the ex parte proceeding and the number of uninterested persons who attended and whether defendant objected. More important, defendant presented no argument why these two instances substantially prejudiced his case. As to the third instance, we note that defendant provides no evidence showing he requested a continuance to locate and copy documents. In addition, the potentially high cost of copying documents is not unique to arbitration, and defendant has not cited any case holding discovery costs renders an arbitration

15

fundamentally unfair.  In sum, defendant failed to show how the arbitration was fundamentally unfair.


## III

## DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.



MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

16