Filed 8/25/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| UNITED HEALTH CENTERS OF THE SAN JOAQUIN VALLEY, INC. <br><br> Petitioner, <br><br> SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> JENNIFER VRADENBURG-HAWORTH, <br><br> Real Party in Interest. | F067763 <br><br> (Super. Ct. No. 11CECG02953) <br><br> **OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Mark W. Snauffer, Judge.

Motschiedler, Michaelides, Wishon, Brewer and Ryan, Russell K. Ryan for Petitioner.

No appearance for Respondent.

Michael J.F. Smith and John L. Migliazzo for Real Party in Interest.

-ooOoo-

The trial court vacated an arbitration award issued in favor of defendant United Health Centers of the San Joaquin Valley, Inc. (UHC) in a wrongful termination case brought against it by its former employee, plaintiff Jennifer Vradenburg-Haworth.  The basis of the trial court's action was that the neutral arbitrator failed to comply with the

mandatory disclosure requirements of Code of Civil Procedure section 1281.9[1] and the ethics standards for arbitrators. Although UHC presented evidence from which the trial court could find that Vradenburg-Haworth's counsel forfeited the right to seek to have the award vacated on this basis, as that principle is explained in *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831 (*Dornbirer*), the trial court determined that, pursuant to section 1281.85, subdivision (c) (hereafter 1281.85(c)), an arbitrator's mandatory disclosure obligations cannot be waived, and refused to consider *Dornbirer*. The question before us is whether the forfeiture principles stated in *Dornbirer* remain viable after the enactment of section 1281.85(c). We conclude that they do. Accordingly, we grant UHC's petition for writ of mandate and reverse the trial court's order vacating the arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

UHC hired Jennifer Vradenburg-Haworth as a part-time physician in 2005. After UHC terminated her employment in September 2010, she filed an action against UHC for retaliation and wrongful termination in violation of public policy. UHC moved to compel arbitration pursuant to an arbitration provision in Vradenburg-Haworth's employment contract. The trial court granted the motion on April 10, 2012.[2]

UHC's counsel, Russell K. Ryan, recommended to Vradenburg-Haworth's counsel, Michael J.F. Smith, that they select either Retired Judge Howard Broadman or Retired Justice Nickolas Dibiaso as the arbitrator. Ryan further advised Smith that he had used both arbitrators on a number of occasions and asked Smith to let him know if he would agree to either one, or if he proposed an alternative. Eventually, Smith agreed to have Judge Broadman arbitrate the case, and a stipulation and order was filed in which the parties agreed to refer the matter to him.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Subsequent references to dates are to dates in 2012, unless otherwise stated.

2.

The arbitration hearing was held before Judge Broadman from October 15 to October 18. The parties submitted post-arbitration briefs. On December 15, Judge Broadman issued written findings and judgment in UHC's favor. Judge Broadman found that UHC terminated Vradenburg-Haworth's position due to the company's financial distress, the impracticality of employing part-time physicians, and personnel issues within the clinic where she worked, and her termination was proper because she was an at-will employee. He found there was no basis for her claims of retaliation and wrongful termination in violation of public policy.

UHC filed a petition to confirm the arbitration award on January 4, 2013. In response, Vradenburg-Haworth asked the trial court to vacate the arbitration award pursuant to section 1285.2, on the ground that Judge Broadman failed to comply with the mandatory disclosure requirements of sections 1281.9 and 1281.85. She also asked the trial court to vacate the award pursuant to section 1286.2, subdivision (a)(4), on the ground Judge Broadman exceeded his powers when he made clear legal errors in his decision.

In Smith's declaration in support of the request to vacate, he stated that before selecting Judge Broadman as the arbitrator, he knew Judge Broadman "as a mediator" and Judge Broadman "was once agreed upon as an arbitrator in another case" which settled without a hearing. Smith declared that after Judge Broadman's appointment on May 17, he did not receive any disclosure from him as required by sections 1281.9 et seq. Smith trusted Judge Broadman because of his experience as a judge and "our experience using him as a mediator." Smith further declared: "We have used him as a mediator, occasionally. When I did not receive any CCP 1281.9 disclosure from him, I trusted that this meant he had nothing to disclose."

Smith explained that after he received Judge Broadman's award, he felt his client was not given a fair hearing. He then "went looking for any disclosure from Mr. Broadman. None existed in our file. We have a very diligent file maintenance clerk in

3.

our office, who keeps all correspondence in all our cases filed carefully. She searched as well. [Smith's associate] Mr. [John] Migliazzo, who has worked on this case from its beginning, also searched. No such letter was received in our office." Neither Smith nor Migliazzo found any disclosure from Judge Broadman, or his office, in their e-mail inboxes, and no faxed disclosure was received in the office.

Migliazzo asked Judge Broadman, in a December 28 letter and e-mail, for a complete disclosure of any prior engagements Judge Broadman may have had with UHC or Ryan, as Smith's office had not received a disclosure. As of January 8, 2013, Smith and Migliazzo had not received a disclosure letter from Judge Broadman. They did have an e-mail exchange with him, in which Judge Broadman asked if they wanted a conference call, but Smith responded that he only wanted a complete and accurate disclosure.

After receiving copies of Smith's and Migliazzo's correspondence to Judge Broadman, Ryan sent Smith and Judge Broadman an e-mail advising that Judge Broadman submitted a disclosure form in a June 28 letter, which Ryan supplemented with a July 9 letter, both of which were submitted to Smith's office. Ryan attached copies of both letters to the e-mail. Ryan also advised that during the two years before Judge Broadman's appointment as arbitrator in this case, Judge Broadman served as a mediator in two cases in which Ryan was involved, and more than two years before, both Smith and he had selected Judge Broadman as a mediator in another case, and Judge Broadman served as a special master in consolidated cases in which Ryan represented one of the parties.

Judge Broadman's three page letter of June 28, which is addressed to both Smith and Ryan, was characterized as a disclosure statement intended to comply with sections 170.1 and 1281.9, the disclosure requirements for arbitrators mandated by Standard 7 of the Ethics Standards for Arbitrators found in the appendix to the California Rules of Court, and any other statutes, rules and standards that may require disclosures or

4.

disqualifications by arbitrators in proceedings such as the one at issue. Judge Broadman stated that he had not served as an arbiter in any matters involving Smith or his office, or either of the parties. He had, however, served as an arbiter in two matters involving Ryan or his law firm. For these two matters, Judge Broadman identified the case name, the attorney for each plaintiff and defendant, and the outcome, i.e., whether he ruled in favor of the plaintiff or defendant. For one matter, Judge Broadman stated the date was "[n]ot recorded," but the other matter took place in July 2007. Ryan's law firm represented the prevailing party in each arbitration. The disclosures did not include the amount of monetary damages awarded as required by section 1281.9; instead, Judge Broadman explained he does not disclose the exact amount of any awards due to his "perceived duty to maintain confidentiality," and invited the attorneys to contact either or both sides of the dispute for that information.

Due to a "previous failure on [his] part to maintain appropriate records," Judge Broadman asked the parties to advise him if they knew of any cases in which he had served as an arbitrator so he could amend the disclosure. He also stated the disclosure did not include mediations which may have been conducted with the parties' attorneys because his "system" did not "easily afford this information[.]" He was willing, however, to try to locate the mediated cases if either party requested a complete disclosure of them; if no request was made any further disclosure was waived. The letter further advised that although Judge Broadman did not have current arrangements with any party concerning prospective employment, he would entertain offers from the parties and their counsel while the arbitration was pending for employment as a dispute resolution neutral in other cases. He was not participating in, and had not participated in within the last two years, discussions regarding prospective employment or service with a party.

Ryan's July 9 letter informed Broadman and Smith that he had received Judge Broadman's June 28 correspondence constituting his disclosure statement in the case.

5.

Ryan advised them that Judge Broadman (1) had served as an arbitrator in one case in which Ryan was involved, which settled prior to the arbitration hearing although Judge Broadman denied a summary judgment motion brought by Ryan's client, and (2) had been appointed the arbitrator in another case scheduled for arbitration in September 2007, in which Ryan represented the plaintiff, which settled on the first day of the arbitration with Judge Broadman's assistance.

In Smith's declaration in support of the request to vacate, he stated that Judge Broadman should have disclosed the four matters Ryan revealed in his July 9 letter and January 2, 2013 e-mail. Smith also was aware of one engagement in which "we" retained Judge Broadman as an arbitrator, which settled before a hearing, and one mediation where "we" hired him as a mediator, which had to be rescheduled. Smith further declared that "we did not receive information that might well have caused us to disqualify [Judge] Broadman as an arbitrator[,]" and they still did not know how many mediations Judge Broadman had conducted for Ryan or his law firm in the two years before his appointment in the present case, the amount of monetary awards involved, or whether they had discussed new or additional work while this matter was pending.

Vradenburg-Haworth argued the award must be vacated pursuant to section 1286.2, subdivision (a)(6) because Judge Broadman refused to follow the mandatory disclosure requirements of the Judicial Council's ethic standards for arbitrators, which are nonnegotiable and cannot be waived, and failed to serve her attorney with a disclosure. She asserted Judge Broadman's purported June 28 disclosure was grossly inadequate as (1) Judge Broadman admitted he does not keep accurate or appropriate records, (2) he attempted to waive his statutory compliance obligation, (3) the disclosure did not include the four matters Ryan revealed or the two matters of which Smith was aware, which were required to be disclosed, and (4) it did not disclose any discussions of prospective employment.

6.

In reply, UHC argued Vradenburg-Haworth could not in good faith argue the award should be vacated due to Judge Broadman's purported failure to make the disclosures required by section 1281.9 because (1) she never served a notice of disqualification based on Judge Broadman's failure to serve a timely disclosure, as provided by section 1281.91; (2) Judge Broadman made the disclosure required by section 1281.9 and, even if Smith did not receive the disclosure statement, he was put on notice such a statement existed via Ryan's July 9 letter which specifically referenced the statement and disclosed the existence of two prior arbitrations involving Judge Broadman; (3) the disclosure statement substantially complied with section 1281.9 and made no material representations or omissions that would warrant disqualification; and (4) Smith knew of Judge Broadman's prior engagements with UHC's counsel, yet chose not to serve a notice of disqualification. UHC further argued Judge Broadman did not commit legal error in deciding in its favor.

In support of it opposition, UHC submitted the declaration of Judge Broadman's assistant, Karen Kimball, in which she stated she mailed the disclosure statement to counsel for the parties at their respective addresses on June 28, and on or after July 9, Judge Broadman gave her a copy of Ryan's July 9 letter to file. Ryan stated in his declaration accompanying the opposition that, to his best recollection, Judge Broadman was advised he was appointed the arbitrator sometime in mid-June. Ryan further stated he received Judge Broadman's June 28 disclosure statement within a day or two of its date and he then prepared his July 9 letter, which was sent by e-mail and regular mail to both Judge Broadman and Smith. According to Ryan, at the time the disclosure statement was served "there were 'no current arrangement[s] concerning prospective employment or other compensated service as a dispute resolution neutral'" between Judge Broadman and himself or his firm, or any other matter "'that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial.'"

7.

Ryan was surprised to see Migliazzo's December 28 correspondence because he knew Judge Broadman had mailed a disclosure statement in June. He followed up with his January 2, 2013 e-mail, attaching a copy of the disclosure statement and his July 9 correspondence. Ryan reviewed his files to see if any information was missing and noted there were two mediations he was involved in within the past two years with Judge Broadman, which he revealed in his e-mail to Smith.

After oral argument on the petitions, the trial court took the matter under submission. On June 14, 2013, it issued a written ruling granting the motion to vacate and denying the petition to confirm. The trial court found that the omission of information in Judge Broadman's disclosure statement, including his admissions that he would not disclose arbitration awards and could not readily disclose mediations, required the award be vacated because the statement fell short of what was legally required.

In so finding, the trial court rejected UHC's contention that any right to vacate the award had been waived since Smith was aware of the relationship between Judge Broadman and Ryan and his firm before the arbitration hearing, yet did nothing until after the award was made. The trial court refused to follow the case UHC relied on, *Dornbirer*, *supra*, 166 Cal.App.4th 831, in which the appellate court held that the statutory scheme does not require an arbitration award be vacated when the arbitrator has disclosed the grounds for disqualification generally, but has not provided all of the specific details required by section 1281.9, and the parties nevertheless agreed to proceed with the arbitration. (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 846.) The trial court determined the *Dornbirer* decision violated the rules of statutory construction and was contrary to section 1281.85, subdivision (c), which provides that the ethics requirements and standards applicable to arbitrators "are nonnegotiable and shall not be waived." The trial court did not make any factual findings and declined to address the other issues presented by the parties as they were moot.

UHC petitioned this court for a writ of mandate. We issued an alternative writ directing the trial court to either vacate its order granting the petition to vacate the arbitration award and issue an order denying the petition, or show cause why the required relief should not issue. The superior court reviewed and reconsidered its ruling, but declined to vacate or reverse it.

## DISCUSSION

UHC contends the trial court erred in finding that Judge Broadman's failure to comply with the statutory disclosure requirements compelled vacatur of the arbitration award because an arbitrator's failure to comply does not automatically require vacating the arbitration award. Instead, UHC argues, the court must consider whether the party seeking to vacate the award was aware of, or knew about, the deficiencies in the arbitrator's disclosure, but waited to inquire further or challenge the arbitrator until after the award was issued. UHC contends that in this case Smith knew Ryan and his firm had prior engagements with Judge Broadman before the arbitration was held, yet did nothing, and Smith's failure to act precludes vacation of the award on the ground of nondisclosure.

*Review by Petition for Writ of Mandate is Appropriate*

As a threshold matter, we begin with Vradenburg-Haworth's contention that writ relief should be denied because UHC has failed to show irreparable harm or that it does not have any other adequate remedy at law, as the expense of re-arbitrating the case is not a sufficient basis to claim inadequacy for purposes of writ review. While it is true that writ review is deemed extraordinary and appellate courts normally are reluctant to grant it, writ review is appropriate where either (1) the party seeking the writ lacks an adequate means, such as direct appeal, to obtain relief, (2) the petitioner will suffer harm or prejudice which cannot be corrected on appeal, or (3) where the petition presents an issue of first impression that is of general interest to the bench and bar. (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221.)

9.

These are all present here. An order vacating an arbitration award and ordering a rehearing is not appealable. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 3 (*Haworth*).) In the absence of writ review, UHC will be required to fully comply with the order, submit to a costly and time consuming arbitration, and then seek review by way of appeal. The cost of having to re-arbitrate the case, coupled with the amount of time necessary to complete the arbitration, justifies reviewing the order vacating the arbitration award. (See, e.g., *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1566-1567.) Finally, the petition presents an issue of first impression, namely the interpretation of section 1281.85(c), which has not been interpreted previously by the courts. This is an issue of general interest to parties to arbitrations and their attorneys. Accordingly, we conclude review by extraordinary writ proceeding is appropriate in this case.

*Standard of Review*

Where the material facts are undisputed, the trial court's determination whether an arbitrator failed to make required disclosures is reviewed de novo. (*Haworth, supra,* 50 Cal.4th at pp. 383, 388).) Where the facts are disputed, "'[w]e must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence.'" (*Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189-190 (*Fininen*).) This standard applies to judgments based on affidavits or declarations, as well as judgments based on oral testimony. (*Fininen*, *supra*, 142 Cal.App.4th at p. 189.)

*Disclosure Requirements*

In seeking to ensure that a neutral arbitrator serves as an impartial decision maker, the statutory scheme requires the arbitrator to disclose to the parties any ground for disqualification. (*Haworth*, *supra*, 50 Cal.4th at p. 381.) Within 10 days of receiving notice of his or her nomination to serve as a neutral arbitrator, the proposed arbitrator is

10.

required to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a), (b); *Haworth*, *supra*, 50 Cal.4th at p. 381.) Based on these disclosures, or if no disclosure is made, the parties have the opportunity to disqualify the proposed neutral arbitrator. (§ 1281.91, subds. (a), (b) & (d); Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration (Ethics Standards), std. 10(a); *Haworth*, *supra*, 50 Cal.4th at p. 381.)[3] Once an arbitration award is made, section 1286.2, subdivision (a)(6)(A) provides that vacation of the award is required if the

---

[3] Section 1281.91 provides: "(a) A proposed neutral arbitrator shall be disqualified if he or she fails to comply with Section 1281.9 and any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after the proposed nominee or appointee fails to comply with Section 1281.9.

"(b)(1) If the proposed neutral arbitrator complies with Section 1281.9, the proposed neutral arbitrator shall be disqualified on the basis of the disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after service of the disclosure statement.

"(2) A party shall have the right to disqualify one court-appointed arbitrator without cause in any single arbitration, and may petition the court to disqualify a subsequent appointee only upon a showing of cause.

"(c) The right of a party to disqualify a proposed neutral arbitrator pursuant to this section shall be waived if the party fails to serve the notice pursuant to the times set forth in this section, unless the proposed nominee or appointee makes a material omission or material misrepresentation in his or her disclosure. Except as provided in subdivision (d), in no event may a notice of disqualification be given after a hearing of any contested issue of fact relating to the merits of the claim or after any ruling by the arbitrator regarding any contested matter. Nothing in this subdivision shall limit the right of a party to vacate an award pursuant to Section 1286.2, or to disqualify an arbitrator pursuant to any other law or statute.

"(d) If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or their respective representatives."

Ethics Standard 10(a) adds that an arbitrator is also disqualified where a party serves a notice of disqualification (1) after service of notice of the prepared nomination, or (2) after the party becomes aware that an arbitrator made a material omission or misrepresentation in his or her disclosure. (Ethics Std. 10(a)(3) & (4).)

11.

arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware[.]"

Section 1281.9, subdivision (a) provides a list of potentially disqualifying information to which the parties are entitled. For example, the arbitrator must disclose "any ground specified in Section 170.1 for disqualification of a judge," as well as "matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter." (§ 1281.9, subd. (a)(1), (2); see Ethics Standards, std. 7(d).)[4]

The proposed arbitrator's initial disclosure must include "[t]he names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a party arbitrator for any party to the arbitration proceeding or for a lawyer for a party and the results of each case arbitrated to conclusion, including [1] the date of the arbitration award, [2] identification of the prevailing party, [3] the names of the parties' attorneys and [4] the amount of monetary damages awarded, if any." (§ 1281.9, subd. (a)(3).) The same information is required for all such cases in which the proposed arbitrator has served or is serving as a neutral arbitrator for any of the parties or their attorneys. (§ 1281.9, subd. (a)(4).)

Pursuant to Ethics Standards, standard 7(d)(4), the arbitrator must disclose the above information for matters in which he or she has served as a neutral or party-appointed arbitrator within the preceding five years. Ethics Standards, standard

---

[4] The Ethics Standards referred to in section 1281.9, subdivision (a)(2), were adopted by the Judicial Council in 2002 under the authority of section 1281.85, to "establish the minimum standards of conduct for neutral arbitrators" and are "intended to guide the conduct of arbitrators, to inform and protect participants in arbitration, and to promote public confidence in the arbitration process." (Ethics Standards, std. 1(a).) Section 1281.85, subdivision (a), provides, in relevant part, that beginning on July 1, 2002, "a person serving as a neutral arbitrator pursuant to an arbitration agreement shall comply with the ethic standards for arbitrators adopted by the Judicial Council pursuant to this section. . . ."

7(d)(5)(A) also requires disclosure of any pending or prior noncollective bargaining case in which (1) the arbitrator has served as a dispute resolution neutral other than an arbitrator, (2) the arbitrator was compensated for his or her services, (3) the case involved a party or lawyer for a party, and (4) the arbitrator concluded his or her service within two years before the date of the arbitrator's proposed nomination or appointment. As pertinent here, where the arbitrator has served as a mediator, he or she must disclose the names of the parties in each prior and pending case, and the name of the attorney in the current arbitration involved in each case. (Ethics Standards, std. 7(d)(5)(B).)

*Forfeiture of Failures to Disclose*

Here, Vradenburg-Haworth asserts Judge Broadman's failure to disclose the amount of the arbitration awards and any mediations he conducted with the parties' attorneys, along with his statement that further disclosure of mediations is "waived" if a party does not request complete disclosure, rendered the June 28 disclosure statutorily deficient. She asserts that, as a result, she did not have access to sufficient information to have been able to discern that Judge Broadman had an incentive to rule in UHC's favor. UHC acknowledges Judge Broadman's disclosure did not comply entirely with the statutory requirements, but contends the incomplete disclosure does not provide sufficient grounds to vacate the award.

Not every omission of information that is required to be disclosed pursuant to section 1281.9 constitutes a "ground for disqualification" within the meaning of section 1286.2, subdivision. (a)(6)(A). (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 842.) Instead, a "ground for disqualification" exists when the arbitrator failed to disclose the existence and nature of any relationship between the arbitrator and the parties or the parties' attorneys. (*Ibid.*)

In *Dornbirer*, the arbitrator in a dispute between a patient and her medical provider (Kaiser) disclosed his prior participation in several matters involving Kaiser and its legal counsel. The disclosure statement omitted multiple pieces of information

13.

required under section 1281.9, including the number of times the arbitrator had presided over arbitrations in which Kaiser was a party, as well as the dates, results, and names of all attorneys involved in those arbitrations.  The patient did not make further inquiry into these omissions, nor did she serve a disqualification notice or demand pursuant to section 1281.91.  (*Dornbirer, supra,* 166 Cal.App.4th at pp. 836-837.)

After the arbitrator ruled in Kaiser's favor, the patient petitioned the superior court to vacate the award pursuant to section 1286.2.  On appeal from the denial of her petition, the patient argued that any information required to be disclosed pursuant to section 1281.9 constitutes a "ground for disqualification" which the arbitrator must disclose in order to avoid mandatory vacatur under section 1286.2, subdivision (a)(6)(A).  (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 842.)  Kaiser responded that this interpretation of the law "would have absurd results, in that a party could successfully move to have any arbitration award vacated if an arbitrator failed to disclose the amount of a single prior award or failed to provide the name of a single attorney involved in a prior arbitration."  (*Ibid*.)  The appellate court agreed with Kaiser.

The appellate court concluded that "not every item of information that is required to be disclosed under section 1281.9 constitutes a 'ground for disqualification' as the term is used in section 1286.2.  Rather, the most reasonable interpretation of the statutory scheme is that the words 'failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware' in section 1286.2 refer to a failure to disclose the existence and nature of any relationship between the arbitrator and the parties or the parties' attorneys, not the specifics of each such relationship."  (*Dornbirer, supra,* 166 Cal.App.4th at p. 842.)  Although the arbitrator has a duty to comply with section 1281.9, the disclosure of past or present relationships constitutes inquiry notice of the potential for bias.  (*Dornbirer, supra,* at p. 842.)  The statutory scheme does not require an arbitration award to be vacated "when the arbitrator has generally disclosed the grounds for disqualification, i.e., his or her relationships and prior

14.

interactions with the parties to the arbitration and/or their attorneys, but has not provided all of the specific details required under section 1281.9, and despite the omissions, the parties agreed to go forward with the arbitration." (*Id*. at p. 846.)

In so holding, the appellate court observed that its interpretation of the statute gave effect to section 1281.91, subdivision (c), "which states that a party waives the right to disqualify a proposed neutral arbitrator if that party fails to meet the time requirements set forth in that section. The exception to this waiver applies only if the proposed arbitrator made a material omission or material misrepresentation in his or her disclosure. (§ 1281.91, subd. (c).) Interpreting section 1286.2 to permit a party to vacate an arbitration award at the conclusion of the arbitration based on an arbitrator's failure to disclose details such as the dates of prior arbitrations or the awards in prior arbitrations when that party *knew* about those prior arbitrations and did not request additional information or move to disqualify the arbitrator would undermine the purpose of the times limitations imposed in subdivision (c) of section 1281.91. The waiver provision would have no effect because a party could simply wait until the arbitration is over and then move to vacate the award, despite having failed to move to disqualify the proposed arbitrator before the arbitration commenced." (*Dornbirer*, *supra*, 166 Cal.App.4th at pp. 845-846.)

The court concluded that because the patient consented to proceed with the arbitration despite being aware of the deficiencies in the arbitrator's disclosure, pursuant to subdivision (c) of section 1281.91 she waived her right to disqualify the arbitrator and could not challenge the arbitration award on the ground his failure to provide the dates, outcomes and names of other attorneys involved in his prior Kaiser arbitrations constitutes a ground for disqualification. (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 846.) As the court explained, "[b]y failing to raise this issue earlier, [the patient] waived the

15.

right to disqualify [the arbitrator] based on an inadequate disclosure that did not amount to a material omission or misrepresentation." (*Ibid.*)[5]

Based on *Dornbirer*, UHC asserts the trial court erred in vacating the arbitration award because the evidence presented below showed that, before the arbitration began, Smith knew that he himself had prior engagements with Judge Broadman, and knew and was put on notice of prior engagements Judge Broadman had with UHC's counsel, yet did not make further inquiry or disqualify Judge Broadman; instead, he chose to wait and see how the arbitration turned out, then challenge the award. The trial court, however, did not decide this factual issue. Instead, while the trial court recognized that *Dornbirer* supported UHC's position, it refused to follow the case on the ground it was wrongly decided and contrary to section 1281.85(c), which states, "The ethics requirements and standards of this chapter [i.e. Chapter 2, "Enforcement of Arbitration Agreements"] are nonnegotiable and shall not be waived."

In this proceeding, Vradenburg-Haworth contends that *Dornbirer* has been overruled by section 1281.85(c), which was added to section 1281.85 in 2010 by Assembly Bill 1090, after *Dornbirer* was decided. (Stats. 2009, ch. 133, § 1 (Assem. Bill No. 1090), eff. Jan. 1, 2010.) She asserts that section 1281.85(c) and subsequent case law "unequivocally eliminated any possibility of 'waiver.'" The resolution of this issue turns on the type of "waiver" prohibited by section 1281.85(c), which is an issue of statutory construction.

---

[5] See *Fininen*, *supra*, 142 Cal.App.4th 185, 190-191 [arbitrator's failure to fully disclose prior mediation of a matter involving Barlow, who was a party to the arbitration, did not provide grounds for vacating the arbitration award where Barlow, who was challenging the award, recognized the arbitrator at the outset of the arbitration and had access to the information concerning the mediation in his own files]; *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1096-1097 (*Britz*) [reaching a similar conclusion under provisions of the Federal Arbitration Act (9 U.S.C. § 1 et seq.)]

Section 1281.85(c) does not define the term "waived." In determining the statute's meaning, "[o]ur task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190; *People v. Smith* (2004) 32 Cal.4th 792, 797-798.) Moreover, "[r]eviewing courts may turn to the legislative history behind even unambiguous statutes when it confirms or bolsters their interpretation." (*In re Gilbert R.* (2012) 211 Cal.App.4th 514, 519.)

"'To resolve [an] ambiguity, we rely upon well-settled rules. "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." [Citations.]' (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68; see also *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 903 [statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts].) We must interpret a statute in accord with its legislative intent and where the Legislature expressly declares its intent, we must accept that declaration. (*Tyrone v. Kelley* (1973)

17.

9 Cal.3d 1, 10–11.)  Absurd or unjust results will never be ascribed to the Legislature, and a literal construction of a statute will not be followed if it is opposed to its legislative intent.  (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344; *Lungren v. Deukmejian* [(1988)] 45 Cal.3d [727], 735.)"  (*In re J.B.* (2009) 178 Cal.App.4th 751, 756.)

The term "waiver" can have multiple meanings.  As our Supreme Court has explained:  "Generally, 'waiver' denotes the voluntary relinquishment of a known right.  But it can also mean the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right.  [Citations.]  The term 'waiver' has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost."  (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315.)  In some cases, such as those which hold that a party may "waive" its right to arbitrate by failing to timely demand arbitration, the use of the word "waiver" connotes "the loss or forfeiture of a right resulting from failure to perform a required act."  (*Ibid.*)

The *Dornbirer* case used the word "waiver" in the sense of a forfeiture of a right resulting from failure to perform an act.  As we have explained, the court held that, by consenting to proceed with the arbitration despite being aware of the deficiencies in the arbitrator's disclosure, the patient "waived" her right to disqualify the arbitrator on the basis of the inadequate disclosure.  (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 846.)  Thus, the court determined that by failing to perform certain acts permitted by statute, namely by failing to serve a notice of disqualification pursuant to section 1281.91 after becoming aware of the deficient disclosure statement, the patient lost her right to vacate the arbitration award based on the deficient statement.

The legislative history of section 1281.85(c), however, reflects that the term "waived" in that subdivision is used in a different way, as the subdivision was enacted to

18.

prohibit contractual waivers of the statutory right to disqualify an arbitrator, not forfeitures of rights resulting from the failure to perform an act.[6] A report of the Assembly Committee on Judiciary states that, according to the bill's author, "'[t]he bill amends the Code of Civil Procedure to prohibit arbitration providers and arbitrators from contracting out of California's ethical standards.'" (Assem. Comm. on Judiciary, Analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.), as introduced Feb. 27, 2009, hearing date May 5, 2009, p. 3.) The report explains: "Although it should be clear that [the Ethics Standards] were established primarily for the purpose of public protection and therefore should not be subject to negotiation or waiver, there have been reported instances of private judging companies imposing and attempting to defend contractual waivers of these obligations, and there have no doubt been unreported instances as well. (E.g., *Azteca Construction, Inc. v. ADR Consulting Inc.*, 121 Cal.App.4th 1156 (2004) [(*Azteca*)]; *Jevne v. Superior Court*, 35 Cal.4th 935 (2005).) This bill would settle any doubt on the matter by declaring expressly that arbitrator ethics rules are not subject to negotiation or waiver." (Assem. Comm. on Judiciary, Analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.), as introduced Feb. 27, 2009, hearing date May 5, 2009, p. 3.)[7]

---

[6] On February 7, 2014, Vradenburg-Haworth filed a request for judicial notice of her reply memorandum filed in support of her request to vacate the arbitration award and the following legislative reports concerning section 1281.85(c): (1) Assem. Comm. on Judiciary, Analysis of Assem. Bill No. 1090 (2009-2010) Reg. Sess.), Hearing on Private Arbitration: Ethics, synopsis, as introduced Feb. 27, 2009; (2) Assem. Floor Analysis, Analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.) as amended May 12, 2009; (3) Sen. Comm. on Judiciary, Analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.), as amended May 12, 2009; and (4) Sen. Floor Analysis, analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.) as amended May 12, 2009. We deferred ruling on the motion. UHC has not objected to the request, which we now grant. (Evid. Code, §§ 452, subds. (c) and (d), 459; *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544 & fn. 4; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1350, fn. 3.)

[7] According to a Senate Judiciary Committee analysis, "[i]n response to instances where an arbitrator has imposed contractual waivers of these obligations, this bill would provide that existing ethical standards and requirements for neutral arbitrator are not

After explaining that the bill does not involve the more controversial issue of whether parties should even be compelled to waive their legal rights by mandatory private arbitration clauses in adhesion contracts, the Assembly report states that the proposed bill avoids the controversy "because it is limited only to involuntary waiver of the arbitrator ethics rules. Ironically then, despite this worthy measure, parties would continue to be compelled to waive their underlying statutory and constitutional rights under mandatory private arbitration clauses." (Assem. Comm. on Judiciary, Analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.), as introduced Feb. 27, 2009, hearing date May 5, 2009, pp. 4-5.)

The *Azteca* case referenced in the legislative history of section 1281.85(c), which Vradenburg-Haworth asserts supports her position, involved the resolution of a conflict between the rules of the American Arbitration Association (AAA) and section 1281.91, subdivision (b), which permits a party uncomfortable with a proposed arbitrator's disclosures to disqualify the arbitrator within 15 days after receipt of the disclosure statement. (*Azteca*, *supra*, 121 Cal.App.4th at p. 1160.) The plaintiff demanded arbitration pursuant to a provision in the parties' written contract which compelled arbitration through AAA and its rules, one of which provided that if a party objected to a neutral arbitrator's continued service, AAA would determine whether the arbitrator should be disqualified. (*Id.* at pp. 1160-1161.) After the proposed arbitrator served a disclosure statement in compliance with section 1281.9, the plaintiff timely demanded disqualification of the proposed arbitrator. AAA, however, determined there was no good cause for disqualification and affirmed the appointment. The arbitration proceeded to its conclusion, which resulted in an award to the defendant. (*Azteca*, *supra*, 121 Cal.App.4th at p. 1161.) The plaintiff filed a petition to vacate the award, claiming the

subject to negotiation and may not be waived." (Sen. Judiciary Comm., Analysis of Assem. Bill No. 1090 (2009-2010 Reg. Sess.), as amended May 12, 2009, p. 1.)

20.

arbitrator was required to disqualify himself on timely receipt of its objection under section 1281.91, subdivisions (b)(1) and (d). The trial court denied the petition, finding the plaintiff waived the statutory disqualification right by agreeing to AAA arbitration. (*Azteca*, *supra*, 121 Cal.App.4th at p. 1162.)

The Court of Appeal reversed, holding that "[t]he provisions for arbitrator disqualification established by the California Legislature may not be waived or superseded by private contract[,]" therefore the arbitrator's refusal to disqualify himself following the plaintiff's timely demand rendered the award subject to vacatur. (*Azteca*, *supra*, 121 Cal.App.4th at p. 1160.) In so holding, the appellate court rejected the defendant's argument that the AAA rule took precedence over the statutory scheme based on freedom of contract principles, namely that the parties voluntarily contracted to limit their statutory disqualification rights and were free, under Civil Code section 3513,[8] to waive a statutory provision intended for their benefit. (*Azteca, supra,* at pp. 1166-1168.)

The court instead determined the AAA rule must yield to the disqualification scheme of sections 1281.9 and 1281.91 because (1) Civil Code section 3513 also provides that "a law established for a public reason cannot be contravened by a private agreement[,]" and the pertinent statutes were enacted primarily for a public purpose; (2) "[t]he critical subject of arbitrator neutrality is a structural aspect of the arbitration and falls within the Legislature's supreme authority"; and (3) an arbitrator's neutrality "is of such critical importance that the Legislature cannot have intended that its regulation be delegable to the unfettered discretion of a private business." (*Azteca*, *supra*, 121 Cal.App.4th at pp. 1166-1168.) Accordingly, the court concluded that the plaintiff could not, by agreeing to submit to arbitration before the AAA, waive its statutory rights to

---

[8] Civil Code section 3513 provides: "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

disqualify an arbitrator under the methods set forth in section 1281.9 and 1281.91. (*Azteca*, *supra*, 121 Cal.App.4th at p. 1168.)

Both *Azteca* and the legislative history of section 1281.85(c) demonstrate that section 1281.85(c) was enacted to address contractual waiver of the disclosure requirements and Ethics Standards, not a party's forfeiture of its statutory right to disqualify an arbitrator as was the case in *Dornbirer*. Moreover, to interpret § 1281.85(c) as the trial court did would render nugatory section 1281.91, subdivision (c), which expressly states that a party's right to disqualify a proposed neutral arbitrator "shall be waived" if the party fails to serve a notice of disqualification pursuant to the times set forth therein. For these reasons, we conclude the term "waived" as used in section 1281.85(c) refers only to contractual waivers and reject Vradenburg-Haworth's contention that *Dornbirer* has been overruled by statute.

Vradenburg-Haworth also asserts existing case law, specifically *Gray v. Chiu* (2013) 212 Cal.App.4th 1355 (*Gray*) and *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299 (*Mt. Holyoke*) requires vacatur. In *Gray*, an arbitrator failed to comply with a requirement of the Ethics Standards that he disclose that the attorney for one of the defendants in a malpractice case worked for the same dispute resolution provider organization (DRPO). (*Gray*, *supra*, 212 Cal.App.4th at p. 1358.) The nine day arbitration took place at the DRPO office, where hallways and meeting areas displayed posters with photographs and names of panel members, including the attorney, brochures throughout the office included the attorney's name and biographical information and, according to the attorney's declaration, he saw the plaintiff's counsel reviewing these brochures during the arbitration. (*Id.* at p. 1360.) The trial court denied the plaintiff's petition to vacate the arbitrator's award. (*Id.* at p. 1361.)

The appellate court held the arbitrator was compelled to disclose that the attorney was a member of the DRPO and his failure to do so required vacatur of the award under section 1286.2, subdivision (a)(6). (*Gray*, *supra*, 212 Cal.App.4th at pp. 1364-1365,

22.

1366.)  In so holding, the court rejected the defendant's argument that the plaintiff waived the right to seek vacatur based on the arbitrator's failure to disclose because the plaintiff knew or should have known of the attorney's membership from the posters and brochures present where the arbitration took place.  (*Id.* at pp. 1365-1366.)  The court based its rejection on two grounds: (1) section 1281.85(c) prohibits waiver of the Ethics Standards, and (2) the Ethics Standards require an arbitrator to make timely disclosure, i.e. within 10 days after the arbitrator becomes aware of the matter, yet the evidence of the attorney's membership did not surface until long after the arbitrator became aware of the information.  (*Gray*, *supra,* 212 Cal.App.4th at p. 1366.)

In *Mt. Holyoke*, the arbitrator of a legal malpractice action failed to disclose that he listed a partner of the defendant law firm as a reference on his resume, which was available on the internet at the time of the arbitration award.  The plaintiff, however, did not discover this fact until after the arbitration.  (*Mt. Holyoke*, *supra*, 219 Cal.App.4th at p. 1312.)  The appellate court held the arbitrator was required to disclose the information and disagreed with the defendants' contention that vacatur was precluded because the plaintiff had constructive knowledge of the information since it was readily discoverable on the internet.  (*Id.* at p. 1313.)  The court explained that a party to an arbitration is not required to investigate a proposed neutral arbitrator to discover information the arbitrator is required to disclose; instead, it is the arbitrator's obligation to timely disclose.  (*Ibid.*)

The court recognized that an arbitrator's failure to disclose would not justify vacating an award if (1) "the party challenging the award had actual knowledge of the information yet failed to timely seek disqualification"; or (2) "the arbitrator disclosed information or a party had actual knowledge of information putting the party on notice of a ground for disqualification, yet the party failed to inquire further," citing *Dornbirer*, *Fininen* and *Britz*.  (*Mt. Holyoke*, *supra*, 219 Cal.App.4th at pp. 1313-1314.)  The court, however, distinguished its case from these situations, as it was undisputed the plaintiff did not discover the resume until after the arbitration and there was no indication she

23.

previously had actual knowledge of information that would have put her on inquiry notice of the undisclosed fact. (*Ibid.*)

Neither *Mt. Holyoke* nor *Gray* preclude our conclusion that section 1281.85(c) prohibits contractual waivers, not forfeitures, and that the holding in *Dornbirer* is still viable. While *Gray* certainly provides support for Vradenburg-Haworth's contention that the disclosure requirements cannot be waived, we decline to follow *Gray* because the appellate court did not consider the legislative history of section 1281.85(c) or analyze whether that subdivision applied to forfeitures of the type discussed in *Dornbirer*. While *Mt. Holyoke* explains that a party is not required to investigate a proposed arbitrator to uncover information the arbitrator is obligated to disclose, it also notes a party may forfeit his or her ability to vacate an arbitrator's award if the party was aware of omitted or incomplete information yet took no action to either disqualify the arbitrator or obtain more information.

Under *Dornbirer*, section 1286.2(a)(6)(A) provides a remedy to those parties who had no reason to know of the existence of a non-disclosed matter. While an arbitrator has a duty to disclose all of the details required to be disclosed pursuant to section 1281.9 and the Ethic Standards, a party aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements, cannot passively reserve the issue for consideration after the arbitration has concluded. Instead, the party must disqualify the arbitrator on that basis before the arbitration begins.

The issue in this case then, is whether the facts, as presented in the declarations filed below, show that Vradenburg-Haworth's attorneys had actual knowledge of a ground for disqualification before the arbitration commenced. The trial court, having rejected the applicability of *Dornbirer*, never reached this issue. Since this involves an issue of fact based on conflicting evidence, we decline UHC's invitation to decide the issue ourselves and Vradenburg-Haworth's invitation to distinguish *Dornbirer* on its facts, and instead remand the matter for the trial court to determine the factual posture of

24.

the case and whether the principles as stated in *Dornbirer* apply to those facts. Neither do we decide the other issues that were before the trial court on the petition to confirm, and request to vacate, the award, which the trial court found were moot. While it is clear Judge Broadman willfully failed to comply with his disclosure obligations, our opinion should not be construed as condoning or excusing his behavior.

## **DISPOSITION**

The petition for writ of mandate is granted. This court's alternative writ of mandate, filed December 11, 2013, is discharged. Let a peremptory writ of mandate issue directing the respondent superior court to vacate its June 14, 2013 order vacating the arbitration award and to reconsider the parties' petitions in light of this opinion. Defendant UHC is entitled to recover its costs in this writ proceeding.

_____
Gomes, Acting P. J.

WE CONCUR:


_____
Kane, J.


_____
Detjen, J.

25.