Filed 11/17/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| H.B.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SOLANO COUNTY,<br><br>    Respondent;<br><br><br>LAMAR DESHAWN HALL,<br><br>    Real Party in Interest. | A168069<br><br>(Solano County Super. Ct. No. FCR341808) |

After Lamar Deshawn Hall pleaded no contest to human trafficking (Pen. Code,[1] § 236.1, subd. (a)) and pimping (§ 266h, subd. (a)), the victim (H.B.) requested restitution: $31,336 for stolen Social Security payments and damage to her credit score, $340,500 for money she received and had taken from her for acts of prostitution Hall forced her to commit, and interest accrued on both sums. The trial court granted restitution as to the financial losses but denied it as to the prostitution earnings on the ground that section 1202.4, subdivision (p), does not expressly authorize restitution for a

---

[1] All subsequent references to statute are to the Penal Code, unless otherwise noted.

1

victim's labor where that labor is itself proscribed by law. In this petition for writ of mandate, H.B. argues that subdivision (p) requires restitution for the illegal labor Hall forced her to perform. We agree and will grant writ relief.

## BACKGROUND

According to H.B.'s declaration in support of her request for restitution, Hall began "exploiting" H.B. "soon after" he met her, "mentally and physically" abusing H.B. "every day [she] was under his control for over [three and a half years]." During that period, Hall made H.B. "work for him," providing "sexual services to customers" and charging "anywhere from $80 to $1,000 per customer." She "earned approximately $300 daily" for that labor, but Hall "took all of this money." On that basis, H.B.'s request for restitution sought $340,500 for Hall's "ill-gotten gains." (Capitalization omitted.)

At the conclusion of Hall's restitution hearing, the trial court ruled: "As to the $340,500, the ill-gotten gains as we've been, just for purposes of ease of discussion, calling them, I'm going to decline to issue restitution award in that regard . . . ." The court then added: "I can see the public policy arguments on both sides, and frankly, I think the public policy arguments favor H.B.'s position, but this Court is cognizant of the fact that I'm a judge, not a legislator, and public policy decisions are for the legislature, and I do not wish to cross the lines, as it relates to separation of powers."

This petition followed.

## DISCUSSION

H.B. argues that section 1202.4, subdivision (p) "authorizes the recovery of funds earned through illegal conduct that a trafficker forced their victim to commit." We agree that this section authorizes restitution for H.B. for return of the money she received for sexual services Hall forced her to commit.

2

As a preliminary matter, we note that Hall does not dispute H.B.'s contention that her claim, if meritorious, qualifies for extraordinary relief. "[W]rit review is deemed appropriate where . . . (1) the party seeking the writ lacks an adequate means, such as direct appeal, to obtain relief, (2) the petitioner will suffer harm or prejudice which cannot be corrected on appeal, or (3) where the petition presents an issue of first impression that is of general interest to the bench and bar." (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74.) Here, because all three of these factors are present, we accept Hall's tacit concession.

"Ordinarily, the standard of review of a restitution order is abuse of discretion. (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231.) However, when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146.)

"Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387–88.)

The plain meaning of section 1202.4, subdivision (p), is instructive, and favors H.B. That subdivision provides in relevant part: "Upon conviction for a violation of [s]ection 236.1, the court shall, in addition to any other penalty or

restitution, order the defendant to pay restitution to the victim in a case in which a victim has suffered economic loss as a result of the defendant's conduct." Here, Hall suffered a "conviction for a violation of [s]ection 236.1." (§ 1202.4, subd. (p).) And, because Hall took all of the money H.B. earned from the acts of prostitution Hall forced her to undertake, she "suffered economic loss as a result of the defendant's conduct." (*Ibid*.) Accordingly, the plain meaning of the statute strongly suggests that the trial court had a duty to "require that" Hall pay "restitution to" H.B. for that loss. (*Ibid*.)

Arguing against this construction, Hall directs us to the latter portion of subdivision (p), which provides as follows: "In determining restitution pursuant to this section, the court shall base its order upon the greater of the following: the gross value of the victim's labor or services based upon the comparable value of similar services in the labor market in which the offense occurred, or the value of the victim's labor as guaranteed under California law, or the actual income derived by the defendant from the victim's labor or services or any other appropriate means to provide reparations to the victim." Because prostitution is not part of a legal "labor market" and has no guaranteed value "under California law," Hall contends that subdivision (p) does not contemplate losses of prostitution earnings.

But Hall's conclusion does not follow from his premises. Even if it were true that in H.B.'s case there are no "similar services in the [legal] labor market"[2] and no guaranteed "value of the victim's labor," that would only mean that those two methods of calculating restitution would yield a result of zero. Fortunately for H.B., the statute prescribes a third method based on

---

[2] In any case, there is reason to doubt Hall's assumption that this statutory language refers only to *legal* labor markets. As we observe below, the legislative history of subdivision (p) suggests that forced prostitution was one of the kinds of labor the Legislature had specifically in mind.

4

"the actual income derived by the defendant from the victim's labor or services." This was the method relied upon in H.B.'s request for restitution, and in the language of subdivision (p), "the greater of" the methods for determining restitution.

Nor are we persuaded by Hall's argument from section 1202.4, subdivision (f)(3). He describes that subdivision as an "expansive . . . list of recoverable economic losses," and notes that it does not include "[r]ecovery of restitution for illicit activity." However, subdivision (f)(3) expressly provides that restitution "not limited to" the listed losses, and it was enacted well before the addition of subdivision (p).

For that matter, the legislative history of subdivision (p) supports H.B.'s position as well. The chaptered bill that enacted subdivision (p) is titled "Trafficking in Persons," established a task force charged with addressing that issue, and explicitly defines "trafficking" for the task force so as to encompass the placement of "persons in situations of . . . forced labor or services, *such as forced prostitution or sexual services. . . .*" (Assem. Bill No. 22 (2005–2006 Reg. Sess.), italics added.) It is therefore unlikely that a Legislature which recognized forced prostitution as an instance of human trafficking and sought to compensate victims of human trafficking, intended also to exclude victims of forced prostitution from that compensation without ever saying so. In short, Hall has adduced nothing from the statutory language or its legislative history to suggest that the Legislature intended to exclude prostitution earnings from subdivision (p). And as the trial court noted, there are strong public policy reasons to include such earnings. Such inclusion provides a powerful financial deterrent to human trafficking and compensates victims for labor they were forced to undertake. If there is any doubt as to subdivision (p)'s plain meaning, the statute's legislative history

5

and these public policy considerations dispel that doubt: Subdivision (p) requires restitution for H.B.'s labor.[3]

Finally, we must decide what disposition is appropriate under the circumstances. " ' "Once the victim has [] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." ' " (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172.) Here, the trial court found at Hall's sentencing hearing that H.B. had "made the prima facie showing necessary for the" $31,336 in financial losses "and the $340,500 for the ill-gotten gains theory of restitution." In turn, the court informed Hall that "the burden shifts to the defense to prove that [this was] inaccurate, or inappropriate, as it were."

So informed, Hall filed a written opposition with no mention of the $31,336. Hall waived his appearance at the restitution hearing, where his counsel made clear that "the only part" he was "opposing" was the $340,500 in "illegally earned funds." In Hall's written opposition to restitution, his arguments at the restitution hearing, and his return to our order to show cause, Hall never argued that the $340,500 figure was inaccurate — only that restitution for that amount was not authorized by law. This opinion therefore resolves the sole controversy over restitution for Hall's "ill-gotten gains"; what remains for the trial court is to vacate the current restitution order and enter a new one.

---

[3] In holding that restitution is required for forced prostitution under the circumstances present here, we do not reach the question of whether the value of any other illegal activity constituting labor or services is similarly recoverable.

## DISPOSITION

Therefore, let a peremptory writ of mandate issue directing the trial court to vacate its April 21, 2023, order for victim compensation and to enter a new order consistent with this opinion.


HIRAMOTO, J.*


WE CONCUR:

STREETER, Acting P. J.
GOLDMAN, J.

*H.B. v. Superior Court* (A168069)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court: Solano County Superior Court

Trial Judge: Hon. William J. Pendergast

Counsel: Justice At Last, Lindsay Marum, Rose M. Marum, and Bora Lee for Petitioner.

Rob Bonta, Attorney General, James Root, Assistant Attorneys General, Brett J. Morris, Tiffany J. Susz and Maggy Krell, Deputy Attorneys General, as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Giambona Law Offices, Salvator Giambona for Real Party in Interest.