Filed 1/5/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARK GOODWIN,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>COMERICA BANK, N.A.,<br><br>      Defendant and Respondent. | A160909<br><br>(Alameda County<br>Super. Ct. No. RG17855144)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on December 15, 2021, be modified as follows:

On page 16, line 6, after the words "Goodwin's petition to confirm the award," add as footnote 10 the following footnote,

> [10] To the extent Comerica suggests that the arbitrator's misleading description of the *Hernandez* resolution was an affirmative misrepresentation independently bringing his impartiality into question and requiring his disqualification, the same analysis applies. Comerica learned the correct facts prior to submitting its opposition to Goodwin's fee motion and failed to raise the issue until after the arbitrator ruled on the motion, thereby forfeiting the issue.

There is no change in the judgment.

The petition for rehearing is denied.

Dated: January 5, 2022       _____ P. J.

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Julia Spain |
| Counsel for Plaintiff and Appellant: | EAST BAY COMMUNITY LAW CENTER, A CLINIC OF BERKELY LAW SCHOOL<br>Kara Acevedo<br>Miguel Soto, Jr.<br><br>WILCOX LAW FIRM, P.C.<br>Ronald Wilcox<br>Allison Krumhorn<br><br>DUPRE LAW FIRM, P.C.<br>Ben E. Dupre |
| Counsel for Defendant and Respondent: | BUCHALTER, A Professional Corporation<br>Peter G. Bertrand<br>Harry W.R. Chamberlain II<br>Cheryl M. Lott<br><br>NUKK-FREEMAN & CERA, L.P.<br>Stacy L. Fode<br>Sabrina E. Lim |

Filed 12/15/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARK GOODWIN, <br><br>      Plaintiff and Appellant, <br> v. <br> COMERICA BANK, N.A., <br><br>      Defendant and Respondent. | A160909 <br><br> (Alameda County <br> Super. Ct. No. RG17855144) |

Mark Goodwin appeals two concurrent orders denying his petition to confirm an arbitration award and granting Comerica Bank's (the bank) petition to vacate the award on the ground that the arbitrator made a material omission or misrepresentation in his disclosure of prior cases involving the parties' lawyers. (See Code Civ. Proc.,[1] § 1281.9.) The disclosure described a prior case involving Goodwin's lawyers as "settled prior to final award" without disclosing that the case had settled after the arbitrator issued an interim award in favor of the client of Goodwin's lawyer. On appeal, the parties debate whether section 1281.9 required the arbitrator to disclose the interim award and whether the omission was sufficiently material to require vacation of the award. We need not decide those questions because the bank forfeited any right to disqualify the arbitrator on that basis by failing to file a notice of disqualification within 15 days of discovering that

---

[1] All statutory citations are to the Code of Civil Procedure unless otherwise specified.

1

omission. We will thus reverse the orders at issue and remand with instructions to enter an order confirming the award.

## Factual and Procedural History

Goodwin subsists on disability benefits that are direct-deposited to a Comerica bank account. In April 2016, he alleges, the bank failed to prevent identity thieves from taking most of his benefits for the month, and then failed to respond fairly to his requests to rectify the situation. He filed this action in 2017.

The bank invoked an arbitration clause in the parties' "Terms of Service" agreement, and the parties agreed to submit the matter to the Honorable Read Ambler (Ret.), who practices in association with JAMS, a for-profit provider of alternative dispute resolution services, and who had previously arbitrated cases in which parties were represented by the lawyers representing both parties in this dispute.

In January 2018, the arbitrator timely served a disclosure statement pursuant to section 1281.9. That statute requires an arbitrator, within 10 days of service of a proposed appointment, to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including all matters within six listed categories. (§ 1281.9, subd. (a).) The categories relevant here are: "(1) The existence of any ground specified in Section 170.1 for disqualification of a judge. . . . [¶] (2) Any matters required to be disclosed by the ethics standards . . . . [¶] (3) . . . [and] [¶] (4) The names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a neutral arbitrator, and the results of each case arbitrated to conclusion, including [specified details]." (*Ibid*.)

The arbitrator included in his disclosure statement a report generated by JAMS that listed cases involving the parties and their lawyers. It listed two arbitrations involving Goodwin's lawyers:[2] "*Hernandez, Edgar, et al. v. Robinson Tait, P.S.* . . . [¶] . . . [¶] Case Result(s): Settled Prior to Final Award—05/07/2013" (*Hernandez*) and "*Private Party v. Dent-A-Med, dba HC Processing Center* . . . [¶] . . . [¶] Case Result(s): case on-going" (*Dent-A-Med*). The statement also noted that "Each JAMS neutral, including me, has an economic interest in the overall financial success of JAMS," and that, "because of the size and nature of JAMS, each side should assume that one or more of the other neutrals who practice with JAMS has participated in . . . [a] dispute resolution proceeding with the parties, counsel[,] or insurers in this case and may do so [again]."

Neither party exercised their statutory right to object to the proposed arbitrator within 15 days based on matters listed in the disclosure statement. (§ 1281.91, subd. (b)(1); see discussion, *post*, at pp. 9–10.)

Between February 2018 and September 2019, the parties litigated the merits of the case before the arbitrator. The litigation included contested discovery motions and the filing of briefs accompanied by exhibits, in lieu of a live evidentiary hearing. The arbitrator heard oral argument in August 2019 and accepted supplemental briefs in September 2019.

On November 1, 2019, while the matter was under submission, the arbitrator served an amended disclosure statement accompanied by a "notice" from a JAMS employee stating, "The initial disclosures previously served in this matter were incomplete and as a result, we are providing a new disclosure

---

[2] The disclosure report indicated that *Hernandez* involved Ronald Wilcox and Ben Dupre (as well as Dupre Law Firm, P.C.), while *Dent-A-Med* involved Mr. Wilcox and Wilcox Law Firm, P.C. We refer to Wilcox and Dupre and their firms, jointly and severally, as "Goodwin's lawyers."

checklist and report." Among other things, the report listed additional matters involving the bank's lawyers and disclosed that, in May 2018, the arbitrator had issued an award in *Dent-A-Med* in favor of the client of Goodwin's lawyer in an unspecified amount.[3] Neither party requested further information or served a notice of disqualification.

Nineteen days later, on November 20, 2019, the arbitrator issued an interim award in Goodwin's favor. He ruled that Goodwin was entitled to $133,000 in damages, as well as attorney fees and costs in an amount to be determined by subsequent motion. The interim award set a briefing schedule for the fees motion and added that the "further determinations" to be made based on that motion "shall be embodied in the Final Award, which shall also incorporate the contents of the Interim Award. It is not intended that this Interim Award be subject to review . . . pursuant to [the federal or California Arbitration Act]."

Goodwin filed his fees motion on December 4, 2019, requesting a total of approximately $925,000 in fees and costs, or $1.8 million after a proposed multiplier. The bank filed an opposition on January 10, 2020, contending that the fees sought were excessive and should be reduced to roughly $375,000. While preparing that opposition—that is, between December 4, 2019 and January 10, 2020—the bank's lawyers learned that before the settlement in *Hernandez* the arbitrator had entered an interim award of attorney fees and

---

[3] The report also stated that the arbitrator is among JAMS's "owner panelists," explaining: "[A] little over one quarter of JAMS neutrals have an equal ownership share in the company. Owners are not privy to information regarding the number of cases or revenue related to cases assigned to other panelists. No shareholder's distribution has ever exceeded 0.1% of JAMS['s] total revenue in a given year. Shareholders are not informed about how their profit distributions are impacted by a particular client, lawyer[,] or law firm[,] and shareholders do not receive credit for the creation or retention of client relationships."

costs in favor of the claimant represented by Goodwin's lawyers, and against the defendant debt collector, in the amount of $322,800.[4] They also learned that a party to the *Dent-A-Med* arbitration had petitioned a federal court to vacate that award on the basis that the arbitrator had failed, in the *Dent-A-Med* arbitration, to disclose the interim award in *Hernandez*.[5] The bank did not thereafter file a notice of disqualification or raise the nondisclosure of those matters in its opposition to the fees motion.

---

[4] In *Hernandez*, the parties had reached a settlement of the merits of their dispute pursuant to which the respondents agreed to pay the claimant $50,000 plus reasonable attorney fees and costs in an amount to be determined by the arbitrator. The arbitrator issued an interim award of fees and costs in the amount of $322,800 but retained jurisdiction to address a claim for additional fees, after which the parties settled.

The trial court found that "[s]ometime between November 2019 and January 2020, defendant learn[ed] about the *Hernandez* arbitration award and the amount of the *Dent-A-Med* arbitration award and discover[ed that] the defendant in *Dent-A-Med* challenged the award in federal court on the grounds of nondisclosure of the *Hernandez* award." Comerica does not dispute the accuracy of that finding and itself asserts that its lawyers discovered the *Hernandez* interim award at some point in "December 2019 and January 2020 . . . [w]hile the post-award fee issues [were] being briefed and argued to the arbitrator."

[5] The bank requested judicial notice below of papers filed with the motion to vacate the arbitration award in *Dent-A-Med*, as well as a transcript of the hearing on that motion. The court took judicial notice of the papers but not the transcript. On appeal, Goodwin challenges the partial denial of the bank's request and himself requests that this court judicially notice the hearing transcript. We deny that request, as the federal court's comments on and resolution of the motion in *Dent-A-Med* are immaterial to the resolution of this appeal. We also deny Goodwin's request for judicial notice of his reply brief to the arbitrator in support of his fees request, which is immaterial to the resolution of this appeal. We grant Goodwin's request for judicial notice of the JAMS Comprehensive Arbitration Rules and Ethics Guidelines, which the bank concedes is proper.

On February 27, 2020, the arbitrator issued a final award reiterating the interim award on the merits and awarding Goodwin just over $900,000 in fees and costs, plus interest.

Goodwin filed a petition to confirm the final award. The bank opposed that petition and filed a petition to vacate the award based on the arbitrator's (1) failure to disclose the interim award in *Hernandez*; (2) 18-month delay in reporting his issuance of an award to the client of Goodwin's lawyers in *Dent-A-Med*, and ongoing failure to disclose its amount; and (3) delay in disclosing his ownership interest in JAMS.

The court granted the bank's petition and denied Goodwin's. It held that the arbitrator's failure to disclose that he had made an interim award of fees in *Hernandez* constituted a "fail[ure] to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (§ 1286.2, subd. (a)(6).) The court noted that section 1281.9 requires a proposed arbitrator to disclose, with regard to all prior cases involving the parties' counsel, "the results of each case arbitrated to conclusion." (§ 1281.9, subd. (a)(4)) If that duty is breached, the court observed, section 1286.2, subdivision (a)(6), requires it to vacate the arbitrator's award without regard to whether the violation caused prejudice. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383.) The court also noted that, while section 1281.91 requires a party to serve a notice of disqualification within 15 days after a proposed arbitrator serves an initial disclosure statement pursuant to section 1281.9, an exception applies if the arbitrator made "a material omission or material misrepresentation in his or her disclosure." The court held that *Hernandez* qualified as a "case arbitrated to conclusion" for purposes of section 1281.9, even though it settled before the arbitrator issued a final award, and that the failure to disclose the interim award amounted to a material omission

6

or misrepresentation. The court rejected Goodwin's argument that the disclosure of the existence of the *Hernandez* matter put the bank on inquiry notice, and that its failure to request further information was an implicit "waiver" of any objection.[6]

Goodwin filed a timely notice of appeal.

## Discussion

Because there are no pertinent disputed facts, this court reviews de novo whether the bank forfeited any right to disqualification by failing to timely raise the arbitrator's failure to make complete and accurate disclosures. (See *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 921 [order vacating arbitral award is reviewed de novo except insofar as it depends on trial court's resolution of factual disputes].) In doing so, we assume without deciding that the trial court correctly ruled that the arbitrator was obligated to disclose in his initial disclosure statement that he had issued an interim award in *Hernandez* (§ 1281.9, subds. (a)(1), (2), and (4); Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (ethics standards), std. 7(d)(4)), and that his description of the arbitration as "settled prior to final award," without

---

[6] The court also rejected the bank's other grounds for vacating the award—that is, the delays in disclosing the arbitrator's ownership interest in JAMS and issuance of an award in the *Dent-A-Med* arbitration. The court held that the bank forfeited any right to disqualification based on the delay in disclosing the *Dent-A-Med* award by failing to raise the issue within 15 days of the belated disclosure, and that the bank's failure to offer evidence of when the arbitrator became a JAMS owner panelist made it impossible to find his disclosure of that status untimely.

7

mention of the interim award, was a material omission and did not put the bank on inquiry notice.[7]

    1. *Caselaw and Statutory Provisions Governing Forfeiture of the Right to Seek Disqualification.*

The Fourth Appellate District recently summarized the relevant principles governing an arbitrator's failure to make adequate disclosure: "If a party learns the arbitrator failed to disclose information relevant to disqualification, the party must object 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.' [Citation.] 'While failure to disclose properly a ground for disqualification generally mandates vacation of the award, this rule only applies if the party moving to vacate "had no reason to know of the existence of a nondisclosed matter." [Citation.] If a party is "aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements," the party "cannot passively reserve the issue for consideration after the arbitration has concluded." ' " (*Alper v. Rotella* (2021) 63 Cal.App.5th 1142, 1152–1153.) In an older opinion, that court put the matter more vividly: "[A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture." (*Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 329.) A party who

---

[7] In view of our conclusion that the bank forfeited its right to seek disqualification on this ground, we need not consider whether the trial court was correct that the omission was sufficiently significant to justify vacating the award if timely raised (cf. *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 842 ["not every item of information . . . required to be disclosed under section 1281.9 constitutes a 'ground for disqualification' as the term is used in section 1286.2"]), or whether the court was right to deny relief based on the bank's other grounds for disqualification —the arbitrator's untimely disclosures of his status as an "owner panelist" of JAMS and of his issuance of an award in the *Dent-A-Med* arbitration. Our forfeiture analysis applies equally to those alternative grounds.

8

learns of a basis to disqualify an arbitrator cannot "wait and see how the arbitration turn[s] out before raising the[] issue[]," which would allow the party to "play games" with the arbitration and "not raise the issue" "until [they] los[e]." (*Honeycutt v. JPMorgan Chase, supra*, 25 Cal.App.5th at pp. 926, 927.)

In accordance with these principles, sections 1281.9 and 1281.91, as supplemented by the ethics standards promulgated by the Judicial Council pursuant to section 1281.85, establish a timeline for arbitrators to disclose potential grounds for disqualification and for parties either to promptly seek disqualification or forfeit the right to do so.

Section 1281.9 requires an arbitrator, within 10 days of notice of a proposed appointment, to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including [certain specific matters]." (§ 1281.9, subd. (a).) Section 1281.91 provides: If the arbitrator "fails to comply with Section 1281.9 and any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days," the arbitrator "shall be disqualified." (§ 1281.91 subd. (a).) If the arbitrator timely serves a disclosure statement, he or she "shall be disqualified on the basis of the disclosure statement after any party . . . serves a notice of disqualification within 15 calendar days after service of the disclosure statement." (*Id.*, subd. (b)(1).) Subdivision (c) of section 1281.91 provides, "The right of a party to disqualify a proposed neutral arbitrator pursuant to this section shall be [forfeited[8]] if the party fails to serve the notice pursuant to the times set forth

---

[8] The statute uses the term "waived," but it is clear in context that the Legislature meant "forfeited." Waiver and forfeiture are distinct doctrines with different substantive requirements, despite the informal shorthand by

in this section, unless the [arbitrator] makes a material omission or material misrepresentation in his or her disclosure." As discussed in more detail below, subdivision (c) adds, "Except as provided in subdivision (d), in no event may a notice of disqualification be given after a hearing of any contested issue of fact relating to the merits of the claim or after any ruling by the arbitrator regarding any contested matter." Subdivision (d) provides that "If any ground specified in section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding. . . ."

To the extent of any uncertainty in the statutory provisions, ethics standard 10 specifies the procedure and time requirement for disqualifying an arbitrator who "makes a material omission or material misrepresentation in his or her [initial] disclosure." That provision, which the parties do not discuss, states that an arbitrator is disqualified if "[a] party becomes aware that an arbitrator has made a material omission or material misrepresentation in his or her disclosure and, *within 15 days after becoming aware of the omission or misrepresentation and within the time specified in . . . section 1281.91(c)*, the party serves a notice of disqualification that clearly describes the material omission or material misrepresentation and how and when the party became aware of [it]." (Ethics Standards, std. 10(a)(4), italics added.) Like section 1281.91, that provision reinforces the basic principle that a party

---

which lawyers and courts often indiscriminately—and at times confusingly—use "waiver" to refer to both. (*United States v. Olano* (1993) 507 U.S. 725, 733–734 ["Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' "]; *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 ["[T]he terms 'waiver' and 'forfeiture' long have been used interchangeably."].)

10

who learns of a ground for disqualification must either raise it promptly or forfeit it. (See *Alper v. Rotella, supra,* 63 Cal.App.5th at pp. 1152–1153.)

2. *Analysis.*

Here, as we assume the trial court correctly ruled, the arbitrator "ma[de] a material omission or material misrepresentation in his or her [initial] disclosure [statement]." (§ 1281.91, subd. (c).) However, the bank did not learn of the omission until after the 15-day window to demand disqualification, based on the initial statement, had passed (see § 1281.91, subd. (b)) and after the arbitrator had heard and decided the merits of the controversy. (See § 1281.91, subd. (c).) The bank learned of the arbitrator's failure to disclose the interim award in *Hernandez* while it was briefing Goodwin's fee motion, which subsequently resulted in an award of attorney fees, costs, and interest comprising approximately 90 percent of the total award.[9]

The parties' appellate briefs, like the court's order, focus on whether the arbitrator's initial disclosure of the existence of the *Hernandez* arbitration put the bank on *inquiry* notice that he might have made interim rulings before the arbitration settled. The trial court did not address Goodwin's distinct argument that the bank forfeited its right to seek disqualification by failing to do so once it had *actual* notice of the *Hernandez* award, and in its initial briefing the bank made only a cursory response to that argument. Relying on the second sentence of subdivision (c) of section 1281.91, the bank argued that, by the time it learned of the *Hernandez* interim award,

---

[9] The bank learned of its other grounds for disqualification—the arbitrator's delays in disclosing his ownership interest in JAMS and his issuance of the *Dent-A-Med* award—in November 2019, while the merits of this case were under submission. Thus, as noted above, the same forfeiture analysis applies to these asserted grounds for disqualification.

it was too late to file a notice of disqualification, because the hearing was underway and the merits of the dispute had already been decided. We thus asked the parties pursuant to Government Code section 68081 to brief whether the bank forfeited its right to challenge the arbitrator notwithstanding the second sentence of section 1281.91, subdivision (c).

As noted above, subdivision (c) of section 1281.91 states, "Except as provided in subdivision (d), in no event may a notice of disqualification be given after a hearing of any contested issue of fact relating to the merits of the claim or after any ruling by the arbitrator regarding any contested matter." (*Ibid.*) Read in isolation, that sentence may support the bank's position. But on that reading, if a basis for disqualification is not discovered until after the arbitration hearing has begun, either the party learning of the basis for disqualification would have no recourse or that party would be required to await the outcome of the arbitration and, if unfavorable, raise the ground for disqualification for the first time in a petition to vacate. Neither outcome would be sensible or fair, and the second would contravene long-settled policy. (See, e.g., *Caminetti v. Pacific Mut. Life Ins. Co. of Cal.* (1943) 22 Cal.2d 386, 392 [" 'It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and . . . avoid, if not.' "].)

For this reason the statute contains an exception to subdivision (c), provided in subdivision (d) of section 1281.91. Subdivision (d) provides, "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made *before the conclusion of the arbitration proceeding*." (Italics added.) The arbitrator's

12

failure here to disclose the sizable interim fee award he made to Goodwin's attorney in another arbitration proceeding, we continue to assume, comes within the grounds for disqualification "specified in section 170.1."

Section 170.1 was enacted to identify grounds for disqualifying a judge, but it applies by reference to arbitrators. (§ 1281.91, subd. (d); § 1281.9, subd. (a)(1); Ethics Standards, std. 10(a)(5).) It states that a judge is disqualified if, among other things, "For any reason, . . . [a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).) That standard is identical to the standard in section 1281.9 requiring the arbitrator to disclose matters that "could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial" (§ 1281.9, subd. (a).) As noted, the trial court held here that this standard compelled disclosure of the omitted information.

Accordingly, to obtain the arbitrator's disqualification, the bank was required to "object 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification' " (*Alper v. Rotella, supra*, 63 Cal.App.5th at p. 1152), and in compliance with the more specific obligation under ethics standard 10(a)(4) to serve a notice of disqualification "within 15 days after becoming aware of the omission or misrepresentation" in the arbitrator's disclosure statement. Having failed to do so, it forfeited the right to demand disqualification when it subsequently learned of the arbitrator's adverse fee award.

The bank is in no position to dispute this conclusion. In petitioning the trial court to vacate the award it relied on section 1281.9, subdivision (a). At its urging, the court held that "the mischaracterization of the *Hernandez* matter satisfies the 'might cause a reasonable person to question' standard of

. . . section 1286.2 and the 'cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial' standard of [ethics standard] 7(d), and was a material omission and material misrepresentation." The bank's supplemental brief defends those findings. Hence, the bank has effectively acknowledged that the identical "might reasonably entertain a doubt" standard of section 170.1, subdivision (a)(6)(A) was satisfied, and therefore the objection could be raised at any time "before the conclusion of the arbitration" (§ 1281.9, subd. (d)).

None of the three cases the bank emphasized at oral argument and in its letter brief responding to the court's request for supplemental briefing affects our conclusion. In *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, the defendants argued that the plaintiff had forfeited the right to seek vacatur of an award based on nondisclosure of a ground for disqualification of which she "knew or should have known." (*Id.* at p. 1366.) There was no explicit finding or concession, as here, that the plaintiff did learn of the ground during the arbitration. Even if she did, the Second District's analysis of the forfeiture claim was unsound. It held that the plaintiff *could not* have forfeited the issue because section 1281.85, subdivision (c) "prohibits waiver of the ethics standards. 'The ethics requirements and standards of this chapter are nonnegotiable and shall not be waived.' " (*Ibid.*) But as the Fifth District has since explained, *Gray v. Chiu* misread section 1281.85. (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 85.) That statute bars the *advance contractual waiver* of rights conferred by the ethics standards—not the *forfeiture* of such rights by failing to timely assert them after learning of a breach. (*Id.* at pp. 79–85.)

In *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, it was "undisputed that [the party seeking to

14

have an award vacated] did not discover until after the arbitration" the fact warranting disqualification. (*Id.* at p. 1314.) While the court rejected an argument that the party forfeited her objection because she had "constructive knowledge" of that fact during the arbitration, it noted that "[a]n arbitrator's failure to make a required disclosure presumably would not justify vacating the arbitrator's award if the party challenging the award had actual knowledge of the information yet failed to timely seek disqualification." (*Id.* at pp. 1313–1314.) That is the case here.

The recent decision in *Jolie v. Superior Court* (2021) 66 Cal.App.5th 1025 also strongly supports our analysis. Addressing a challenge to a temporary judge based on his belated disclosure of new cases in which he was involved with the lawyers for one party (Pitt), the Second District applied the "person aware of the facts might reasonably entertain a doubt" standard of section 170.1, subdivision (a)(6)(A). (*Jolie, supra,* at p. 1046.) Pitt contended that the other party (Jolie) forfeited her objection to the temporary judge because the judge's initial disclosures had put Jolie "on notice that [he] had a significant history of serving in cases in which [Pitt's lawyers] represented one of the parties." (*Ibid.*) Citing numerous cases, the court reaffirmed that "[a] delay in seeking to disqualify a judge 'constitutes forfeiture or an implied waiver of the disqualification.' " (*Ibid.*) In rejecting the argument that Jolie forfeited her objections because she was on inquiry notice, and directing the trial court to order the temporary judge disqualified, the court emphasized that, "[u]pon receiving th[e] new information, Jolie promptly sought disqualification." (*Id.* at p. 1043; see also *id.* at pp. 1035–1037 [Jolie sought recusal two days after learning details of new matters, then promptly filed a disqualification statement, and then filed a writ petition.].) The facts there contrast sharply with the bank's silence upon learning the facts here.

15

Because the bank failed to seek the arbitrator's disqualification within 15 days of discovering the facts requiring disqualification and before the arbitrator decided the pending fee motion, it forfeited the right to demand disqualification. The order vacating the award based on the arbitrator's disqualification thus must be reversed. Because the bank has identified no other grounds for denying Goodwin's petition to confirm the award, that petition must be granted.

### Disposition

The order granting the bank's petition to vacate the arbitration award and the order denying Goodwin's petition to confirm the award are both reversed, and the matter is remanded with directions to issue orders denying the bank's petition to vacate and granting Goodwin's petition to confirm.

POLLAK, P. J.

WE CONCUR:

BROWN, J.
ROSS, J.[*]

---

[*] Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Julia Spain |
| Counsel for Plaintiff and Appellant: | EAST BAY COMMUNITY LAW CENTER, A CLINIC OF BERKELY LAW SCHOOL<br>Kara Acevedo<br>Miguel Soto, Jr.<br><br>WILCOX LAW FIRM, P.C.<br>Ronald Wilcox<br>Allison Krumhorn<br><br>DUPRE LAW FIRM, P.C.<br>Ben E. Dupre |
| Counsel for Defendant and Respondent: | BUCHALTER, A Professional Corporation<br>Peter G. Bertrand<br>Harry W.R. Chamberlain II<br>Cheryl M. Lott<br><br>NUKK-FREEMAN & CERA, L.P.<br>Stacy L. Fode<br>Sabrina E. Lim |